# EXHIBIT 1

# PROPOSITION 211

**OFFICIAL TITLE**

AN INITIATIVE MEASURE

AMENDING TITLE 16, ARIZONA REVISED STATUTES BY ADDING CHAPTER 6.1; RELATING TO THE DISCLOSURE OF THE ORIGINAL SOURCE OF MONIES USED FOR CAMPAIGN MEDIA SPENDING.

Be it enacted by the People of the State of Arizona:

**Section 1. Short title**

This act may be cited as the "Voters' Right to Know Act".

**Section 2. Purpose and Intent**

A. This act establishes that the People of Arizona have the right to know the original source of all major contributions used to pay, in whole or part, for campaign media spending. This right requires the prompt, accessible, comprehensible and public disclosure of the identity of all donors who give more than $5,000 to fund campaign media spending in an election cycle and the source of those monies, regardless of whether the monies passed through one or more intermediaries.

B. This act is intended to protect and promote rights and interests guaranteed by the First Amendment of the United States Constitution and also protected by the Arizona Constitution, to promote self-government and ensure responsive officeholders, to prevent corruption and to assist Arizona voters in making informed election decisions by securing their right to know the source of monies used to influence Arizona elections.

C. By adopting this act, the People of Arizona affirm their desire to stop "dark money," the practice of laundering political contributions, often through multiple intermediaries, to hide the original source.

D. This act empowers the Citizens Clean Elections Commission and individual voters to enforce its disclosure requirements. Violators will be subject to significant civil penalties.

**Section 3. Title 16, Arizona Revised Statutes, is amended by adding chapter 6.1, to read:**

### CHAPTER 6.1. CAMPAIGN MEDIA SPENDING

### ARTICLE 1. DISCLOSURE OF ORIGINAL SOURCE OF MONIES

**16-971. Definitions**

IN THIS CHAPTER, UNLESS THE CONTEXT OTHERWISE REQUIRES:
1. "BUSINESS INCOME" MEANS:
   (a) MONIES RECEIVED BY A PERSON IN COMMERCIAL TRANSACTIONS IN THE ORDINARY COURSE OF THE PERSON'S REGULAR TRADE, BUSINESS OR INVESTMENTS.
   (b) MEMBERSHIP OR UNION DUES THAT DO NOT EXCEED $5,000 FROM ANY ONE PERSON IN A CALENDAR YEAR.
2. "CAMPAIGN MEDIA SPENDING":
   (a) MEANS SPENDING MONIES OR ACCEPTING IN-KIND CONTRIBUTIONS TO PAY FOR ANY OF THE FOLLOWING:
      (i) A PUBLIC COMMUNICATION THAT EXPRESSLY ADVOCATES FOR OR AGAINST THE NOMINATION, OR ELECTION OF A CANDIDATE.
      (ii) A PUBLIC COMMUNICATION THAT PROMOTES, SUPPORTS, ATTACKS OR OPPOSES A CANDIDATE WITHIN SIX MONTHS PRECEDING AN ELECTION INVOLVING THAT CANDIDATE.
      (iii) A PUBLIC COMMUNICATION THAT REFERS TO A CLEARLY IDENTIFIED CANDIDATE WITHIN NINETY DAYS BEFORE A PRIMARY ELECTION UNTIL THE TIME OF THE GENERAL ELECTION AND THAT IS DISSEMINATED IN THE JURISDICTION WHERE THE CANDIDATE'S ELECTION IS TAKING PLACE.

- (iv) A PUBLIC COMMUNICATION THAT PROMOTES, SUPPORTS, ATTACKS OR OPPOSES THE QUALIFICATION OR APPROVAL OF ANY STATE OR LOCAL INITIATIVE OR REFERENDUM.
- (v) A PUBLIC COMMUNICATION THAT PROMOTES, SUPPORTS, ATTACKS OR OPPOSES THE RECALL OF A PUBLIC OFFICER.
- (vi) AN ACTIVITY OR PUBLIC COMMUNICATION THAT SUPPORTS THE ELECTION OR DEFEAT OF CANDIDATES OF AN IDENTIFIED POLITICAL PARTY OR THE ELECTORAL PROSPECTS OF AN IDENTIFIED POLITICAL PARTY, INCLUDING PARTISAN VOTER REGISTRATION, PARTISAN GET-OUT-THE-VOTE ACTIVITY OR OTHER PARTISAN CAMPAIGN ACTIVITY.
- (vii) RESEARCH, DESIGN, PRODUCTION, POLLING, DATA ANALYTICS, MAILING OR SOCIAL MEDIA LIST ACQUISITION OR ANY OTHER ACTIVITY CONDUCTED IN PREPARATION FOR OR IN CONJUNCTION WITH ANY OF THE ACTIVITIES DESCRIBED IN ITEMS (i) THROUGH (vi) OF THIS SUBDIVISION.

(b) DOES NOT INCLUDE SPENDING MONIES OR ACCEPTING IN-KIND CONTRIBUTIONS FOR ANY OF THE FOLLOWING:
- (i) A NEWS STORY, COMMENTARY OR EDITORIAL BY ANY BROADCASTING STATION, CABLE TELEVISION OPERATOR, VIDEO SERVICE PROVIDER, PROGRAMMER OR PRODUCER, NEWSPAPER, MAGAZINE, WEBSITE OR OTHER PERIODICAL PUBLICATION THAT IS NOT OWNED OR OPERATED BY A CANDIDATE, A CANDIDATE'S SPOUSE OR A CANDIDATE COMMITTEE, POLITICAL PARTY OR POLITICAL ACTION COMMITTEE.
- (ii) A NONPARTISAN ACTIVITY INTENDED TO ENCOURAGE VOTER REGISTRATION AND TURNOUT.
- (iii) PUBLISHING A BOOK OR PRODUCING A DOCUMENTARY, IF THE PUBLICATION OR PRODUCTION IS FOR DISTRIBUTION TO THE GENERAL PUBLIC THROUGH TRADITIONAL DISTRIBUTION MECHANISMS OR IF A FEE IS REQUIRED TO PURCHASE THE BOOK OR VIEW THE DOCUMENTARY.
- (iv) PRIMARY OR NONPARTISAN DEBATES BETWEEN CANDIDATES OR BETWEEN PROPONENTS AND OPPONENTS OF A STATE OR LOCAL INITIATIVE OR REFERENDUM AND ANNOUNCEMENTS OF THOSE DEBATES.

3. "CANDIDATE" HAS THE SAME MEANING AS IN SECTION 16-901.
4. "CANDIDATE COMMITTEE" HAS THE SAME MEANING AS IN SECTION 16-901.
5. "COMMISSION" MEANS THE CITIZENS CLEAN ELECTIONS COMMISSION.
6. "CONTRIBUTION" MEANS MONEY, DONATION, GIFT, LOAN OR ADVANCE OR OTHER THING OF VALUE, INCLUDING GOODS AND SERVICES.
7. "COVERED PERSON"
   (a) MEANS ANY PERSON WHOSE TOTAL CAMPAIGN MEDIA SPENDING OR ACCEPTANCE OF IN-KIND CONTRIBUTIONS TO ENABLE CAMPAIGN MEDIA SPENDING, OR A COMBINATION OF BOTH, IN AN ELECTION CYCLE IS MORE THAN $50,000 IN STATEWIDE CAMPAIGNS OR MORE THAN $25,000 IN ANY OTHER TYPE OF CAMPAIGNS. FOR THE PURPOSES OF THIS CHAPTER, THE AMOUNT OF A PERSON'S CAMPAIGN MEDIA SPENDING INCLUDES CAMPAIGN MEDIA SPENDING MADE BY ENTITIES ESTABLISHED, FINANCED, MAINTAINED OR CONTROLLED BY THAT PERSON.
   (b) DOES NOT INCLUDE:
   - (i) INDIVIDUALS WHO SPEND ONLY THEIR OWN PERSONAL MONIES FOR CAMPAIGN MEDIA SPENDING.
   - (ii) ORGANIZATIONS THAT SPEND ONLY THEIR OWN BUSINESS INCOME FOR CAMPAIGN MEDIA SPENDING.
   - (iii) A CANDIDATE COMMITTEE.
   - (iv) A POLITICAL ACTION COMMITTEE OR POLITICAL PARTY THAT RECEIVES NOT MORE THAN $20,000 IN CONTRIBUTIONS, INCLUDING IN-KIND CONTRIBUTIONS, FROM ANY ONE PERSON IN AN ELECTION CYCLE.
8. "ELECTION CYCLE" MEANS THE TIME BEGINNING THE DAY AFTER GENERAL ELECTION DAY IN EVEN-NUMBERED YEARS AND CONTINUING THROUGH THE END OF GENERAL ELECTION DAY IN THE NEXT EVEN-NUMBERED YEAR.
9. "EXPRESSLY ADVOCATES" HAS THE SAME MEANING AS IN SECTION 16-901.01.
10. "IDENTITY" MEANS:

PROPOSITION 211

  (a) IN THE CASE OF AN INDIVIDUAL, THE NAME, MAILING ADDRESS, OCCUPATION AND EMPLOYER OF THE INDIVIDUAL

  (b) IN THE CASE OF ANY OTHER PERSON, THE NAME, MAILING ADDRESS, FEDERAL TAX STATUS AND STATE OF INCORPORATION, REGISTRATION OR PARTNERSHIP, IF ANY.

11. "IN-KIND CONTRIBUTION" MEANS A CONTRIBUTION OF GOODS, SERVICES OR ANYTHING OF VALUE THAT IS PROVIDED WITHOUT CHARGE OR AT LESS THAN THE USUAL AND NORMAL CHARGE.

12. "ORIGINAL MONIES" MEANS BUSINESS INCOME OR AN INDIVIDUAL'S PERSONAL MONIES.

13. "PERSON" INCLUDES BOTH A NATURAL PERSON AND AN ENTITY SUCH AS A CORPORATION, LIMITED LIABILITY COMPANY, LABOR ORGANIZATION, PARTNERSHIP OR ASSOCIATION, REGARDLESS OF LEGAL FORM.

14. "PERSONAL MONIES"
    - (a) MEANS ANY OF THE FOLLOWING:
        - (i) ANY ASSET OF AN INDIVIDUAL THAT, AT THE TIME THE INDIVIDUAL ENGAGED IN CAMPAIGN MEDIA SPENDING OR TRANSFERRED MONIES TO ANOTHER PERSON FOR SUCH SPENDING, THE INDIVIDUAL HAD LEGAL CONTROL OVER AND RIGHTFUL TITLE TO.
        - (ii) INCOME RECEIVED BY AN INDIVIDUAL OR THE INDIVIDUAL'S SPOUSE, INCLUDING SALARY AND OTHER EARNED INCOME FROM BONA FIDE EMPLOYMENT, DIVIDENDS AND PROCEEDS FROM THE INDIVIDUAL'S PERSONAL INVESTMENTS OR BEQUESTS TO THE INDIVIDUAL, INCLUDING INCOME FROM TRUSTS ESTABLISHED BY BEQUESTS.
        - (iii) A PORTION OF ASSETS THAT ARE JOINTLY OWNED BY THE INDIVIDUAL AND THE INDIVIDUAL'S SPOUSE EQUAL TO THE INDIVIDUAL'S SHARE OF THE ASSET UNDER THE INSTRUMENT OF CONVEYANCE OR OWNERSHIP. IF NO SPECIFIC SHARE IS INDICATED BY AN INSTRUMENT OF CONVEYANCE OR OWNERSHIP, THE VALUE IS ONE-HALF THE VALUE OF THE PROPERTY OR ASSET.
    - (b) DOES NOT MEAN ANY ASSET OR INCOME RECEIVED FROM ANY PERSON FOR THE PURPOSE OF INFLUENCING ANY ELECTION.

15. "POLITICAL ACTION COMMITTEE" HAS THE SAME MEANING AS IN SECTION 16-901.

16. "POLITICAL PARTY" HAS THE SAME MEANING AS IN SECTION 16-901.

17. "PUBLIC COMMUNICATION"
    - (a) MEANS A PAID COMMUNICATION TO THE PUBLIC BY MEANS OF BROADCAST, CABLE, SATELLITE, INTERNET OR ANOTHER DIGITAL METHOD, NEWSPAPER, MAGAZINE, OUTDOOR ADVERTISING FACILITY, MASS MAILING OR ANOTHER MASS DISTRIBUTION, TELEPHONE BANK OR ANY OTHER FORM OF GENERAL PUBLIC POLITICAL ADVERTISING OR MARKETING, REGARDLESS OF MEDIUM.
    - (b) DOES NOT INCLUDE COMMUNICATIONS BETWEEN AN ORGANIZATION AND ITS EMPLOYEES, STOCKHOLDERS OR BONA FIDE MEMBERS.

18. "TRACEABLE MONIES" MEANS:
    - (a) MONIES THAT HAVE BEEN GIVEN, LOANED OR PROMISED TO BE GIVEN TO A COVERED PERSON AND FOR WHICH NO DONOR HAS OPTED OUT OF THEIR USE OR TRANSFER FOR CAMPAIGN MEDIA SPENDING PURSUANT TO SECTION 16-972.
    - (b) MONIES USED TO PAY FOR IN-KIND CONTRIBUTIONS TO A COVERED PERSON TO ENABLE CAMPAIGN MEDIA SPENDING.

19. "TRANSFER RECORDS" MEANS A WRITTEN RECORD OF THE IDENTITY OF EACH PERSON THAT DIRECTLY OR INDIRECTLY CONTRIBUTED OR TRANSFERRED MORE THAN $2,500 OF ORIGINAL MONIES USED FOR CAMPAIGN MEDIA SPENDING, THE AMOUNT OF EACH CONTRIBUTION OR TRANSFER AND THE PERSON TO WHOM THOSE MONIES WERE TRANSFERRED.

**16-972. Campaign media spending; transfer records; written notice; donor opt-out; disclosure of previous records**

A. A COVERED PERSON MUST MAINTAIN TRANSFER RECORDS. THE COVERED PERSON MUST MAINTAIN THESE RECORDS FOR AT LEAST FIVE YEARS AND PROVIDE THE RECORDS ON REQUEST TO THE COMMISSION.

B. BEFORE THE COVERED PERSON MAY USE OR TRANSFER A DONOR'S MONIES FOR CAMPAIGN MEDIA SPENDING, THE DONOR MUST BE NOTIFIED IN WRITING THAT THE MONIES MAY BE SO

      USED AND MUST BE GIVEN AN OPPORTUNITY TO OPT OUT OF HAVING THE DONATION USED OR TRANSFERRED FOR CAMPAIGN MEDIA SPENDING. THE NOTICE UNDER THIS SUBSECTION MUST:

      1. INFORM DONORS THAT THEIR MONIES MAY BE USED FOR CAMPAIGN MEDIA SPENDING AND THAT INFORMATION ABOUT DONORS MAY HAVE TO BE REPORTED TO THE APPROPRIATE GOVERNMENT AUTHORITY IN THIS STATE FOR DISCLOSURE TO THE PUBLIC.
      2. INFORM DONORS THAT THEY CAN OPT OUT OF HAVING THEIR MONIES USED OR TRANSFERRED FOR CAMPAIGN MEDIA SPENDING BY NOTIFYING THE COVERED PERSON IN WRITING WITHIN TWENTY-ONE DAYS AFTER RECEIVING THE NOTICE.
      3. COMPLY WITH RULES ADOPTED BY THE COMMISSION PURSUANT TO THIS CHAPTER TO ENSURE THAT THE NOTICE IS CLEARLY VISIBLE AND THAT IT ACCOMPLISHES THE PURPOSES OF THIS SECTION.

C. THE NOTICE REQUIRED BY THIS SECTION MAY BE PROVIDED TO THE DONOR BEFORE OR AFTER THE COVERED PERSON RECEIVES A DONOR'S MONIES, BUT THE DONOR'S MONIES MAY NOT BE USED OR TRANSFERRED FOR CAMPAIGN MEDIA SPENDING UNTIL AT LEAST TWENTY-ONE DAYS AFTER THE NOTICE IS PROVIDED OR UNTIL THE DONOR PROVIDES WRITTEN CONSENT PURSUANT TO THIS SECTION, WHICHEVER IS EARLIER.

D. ANY PERSON THAT DONATES TO A COVERED PERSON MORE THAN $5,000 IN TRACEABLE MONIES IN AN ELECTION CYCLE MUST INFORM THAT COVERED PERSON IN WRITING, WITHIN TEN DAYS AFTER RECEIVING A WRITTEN REQUEST FROM THE COVERED PERSON, OF THE IDENTITY OF EACH OTHER PERSON THAT DIRECTLY OR INDIRECTLY CONTRIBUTED MORE THAN $2,500 IN ORIGINAL MONIES BEING TRANSFERRED AND THE AMOUNT OF EACH OTHER PERSON'S ORIGINAL MONIES BEING TRANSFERRED. IF THE ORIGINAL MONIES WERE PREVIOUSLY TRANSFERRED, THE DONOR MUST DISCLOSE ALL SUCH PREVIOUS TRANSFERS OF MORE THAN $2,5OO AND IDENTIFY THE INTERMEDIARIES. THE DONOR MUST MAINTAIN THESE RECORDS FOR AT LEAST FIVE YEARS AND PROVIDE THE RECORDS ON REQUEST TO THE COMMISSION.

E. ANY PERSON THAT MAKES AN IN-KIND CONTRIBUTION TO A COVERED PERSON OF MORE THAN $5,000 IN AN ELECTION CYCLE TO ENABLE CAMPAIGN MEDIA SPENDING MUST INFORM THAT COVERED PERSON IN WRITING, AT THE TIME THE IN-KIND CONTRIBUTION IS MADE OR PROMISED TO BE MADE, OF THE IDENTITY OF EACH OTHER PERSON THAT DIRECTLY OR INDIRECTLY CONTRIBUTED OR PROVIDED MORE THAN $2,500 IN ORIGINAL MONIES USED TO PAY FOR THE IN-KIND CONTRIBUTION AND THE AMOUNT OF EACH OTHER PERSON'S ORIGINAL MONIES SO USED. IF THE ORIGINAL MONIES WERE PREVIOUSLY TRANSFERRED, THE IN-KIND DONOR MUST DISCLOSE ALL SUCH PREVIOUS TRANSFERS OF MORE THAN $2,500 AND IDENTIFY THE INTERMEDIARIES. THE IN-KIND DONOR MUST MAINTAIN THESE RECORDS FOR AT LEAST FIVE YEARS AND PROVIDE THE RECORDS ON REQUEST TO THE COMMISSION.

      **16-973. Disclosure reports; exceptions**

A. WITHIN FIVE DAYS AFTER FIRST SPENDING MONIES OR ACCEPTING IN-KIND CONTRIBUTIONS TOTALING $50,000 OR MORE DURING AN ELECTION CYCLE ON CAMPAIGN MEDIA SPENDING IN STATEWIDE CAMPAIGNS OR $25,000 OR MORE DURING THE ELECTION CYCLE IN ANY OTHER TYPE OF CAMPAIGNS, A COVERED PERSON SHALL FILE WITH THE SECRETARY OF STATE AN INITIAL REPORT THAT DISCLOSES ALL OF THE FOLLOWING:
      1. THE IDENTITY OF THE PERSON THAT OWNS OR CONTROLS THE TRACEABLE MONIES.
      2. THE IDENTITY OF ANY ENTITY ESTABLISHED, FINANCED, MAINTAINED OR CONTROLLED BY THE PERSON THAT OWNS OR CONTROLS THE TRACEABLE MONIES AND THAT MAINTAINS ITS OWN TRANSFER RECORDS AND THAT ENTITY'S RELATIONSHIP TO THE COVERED PERSON.
      3. THE NAME, MAILING ADDRESS AND POSITION OF THE INDIVIDUAL WHO IS THE CUSTODIAN OF THE TRANSFER RECORDS.
      4. THE NAME, MAILING ADDRESS AND POSITION OF AT LEAST ONE INDIVIDUAL WHO CONTROLS, DIRECTLY OR INDIRECTLY, HOW THE TRACEABLE MONIES ARE SPENT.
      5. THE TOTAL AMOUNT OF TRACEABLE MONIES OWNED OR CONTROLLED BY THE COVERED PERSON ON THE DATE THE REPORT IS MADE.

6. THE IDENTITY OF EACH DONOR OF ORIGINAL MONIES WHO CONTRIBUTED, DIRECTLY OR INDIRECTLY, MORE THAN $5,000 OF TRACEABLE MONIES OR IN-KIND CONTRIBUTIONS FOR CAMPAIGN MEDIA SPENDING DURING THE ELECTION CYCLE TO THE COVERED PERSON AND THE DATE AND AMOUNT OF EACH OF THE DONOR'S CONTRIBUTIONS.
7. THE IDENTITY OF EACH PERSON THAT ACTED AS AN INTERMEDIARY AND THAT TRANSFERRED, IN WHOLE OR IN PART, TRACEABLE MONIES OF MORE THAN $5,000 FROM ORIGINAL SOURCES TO THE COVERED PERSON AND THE DATE, AMOUNT AND SOURCE, BOTH ORIGINAL AND INTERMEDIATE, OF THE TRANSFERRED MONIES.
8. THE IDENTITY OF EACH PERSON THAT RECEIVED FROM THE COVERED PERSON DISBURSEMENTS TOTALING $10,000 OR MORE OF TRACEABLE MONIES DURING THE ELECTION CYCLE AND THE DATE AND PURPOSE OF EACH DISBURSEMENT, INCLUDING THE FULL NAME AND OFFICE SOUGHT OF ANY CANDIDATE OR A DESCRIPTION OF ANY BALLOT PROPOSITION THAT WAS SUPPORTED, OPPOSED OR REFERENCED IN A PUBLIC COMMUNICATION THAT WAS PAID FOR, IN WHOLE OR IN PART, WITH THE DISBURSED MONIES.
9. THE IDENTITY OF ANY PERSON WHOSE TOTAL CONTRIBUTIONS OF TRACEABLE MONIES TO THE COVERED PERSON CONSTITUTED MORE THAN HALF OF THE TRACEABLE MONIES OF THE COVERED PERSON AT THE START OF THE ELECTION CYCLE.

B. AFTER A COVERED PERSON MAKES AN INITIAL REPORT, EACH TIME THE COVERED PERSON SPENDS MONIES OR ACCEPTS IN-KIND CONTRIBUTIONS TOTALING AN ADDITIONAL $25,000 OR MORE DURING AN ELECTION CYCLE ON CAMPAIGN MEDIA SPENDING IN STATEWIDE CAMPAIGNS OR AN ADDITIONAL $15,000 OR MORE ON CAMPAIGN MEDIA SPENDING DURING AN ELECTION CYCLE IN ANY OTHER TYPE OF CAMPAIGNS, THAT COVERED PERSON SHALL FILE WITH THE SECRETARY OF STATE WITHIN THREE DAYS AFTER SPENDING MONIES OR ACCEPTING THE IN-KIND CONTRIBUTION A REPORT THAT DISCLOSES ANY INFORMATION THAT HAS CHANGED SINCE THE MOST RECENT REPORT WAS MADE PURSUANT TO THIS SECTION.

C. WHEN THE INFORMATION REQUIRED PURSUANT TO SUBSECTION A, PARAGRAPHS 1 THROUGH 4 OF THIS SECTION HAS CHANGED SINCE IT WAS PREVIOUSLY REPORTED, THE CHANGED INFORMATION SHALL BE REPORTED TO THE SECRETARY OF STATE WITHIN TWENTY DAYS, EXCEPT THAT THERE IS NO OBLIGATION TO REPORT CHANGES THAT OCCUR MORE THAN ONE YEAR AFTER THE MOST RECENT REPORT SHOULD HAVE BEEN FILED PURSUANT TO THIS SECTION.

D. TO DETERMINE THE SOURCES, INTERMEDIARIES AND AMOUNTS OF INDIRECT CONTRIBUTIONS RECEIVED, A COVERED PERSON MAY RELY ON THE INFORMATION IT RECEIVED PURSUANT TO SECTION 16-972, UNLESS THE COVERED PERSON KNOWS OR HAS REASON TO KNOW THAT THE INFORMATION RELIED ON IS FALSE OR UNRELIABLE.

E. WHEN A COVERED PERSON TRANSFERS MORE THAN $5,000 IN TRACEABLE MONIES TO ANOTHER COVERED PERSON, OR AFTER RECEIVING THE REQUIRED NOTICE UNDER SECTION 16-972, SUBSECTION B, FAILS TO OPT OUT OF HAVING PREVIOUSLY TRANSFERRED MONIES USED FOR CAMPAIGN MEDIA SPENDING, A TRANSFER RECORD MUST BE PROVIDED TO THE RECIPIENT COVERED PERSON THAT IDENTIFIES EACH PERSON THAT DIRECTLY OR INDIRECTLY CONTRIBUTED MORE THAN $2,500 OF THE ORIGINAL MONIES BEING TRANSFERRED, THE AMOUNT OF EACH PERSON'S ORIGINAL MONIES BEING TRANSFERRED, AND ANY OTHER PERSON THAT PREVIOUSLY TRANSFERRED THE ORIGINAL MONIES.

F. NOTWITHSTANDING ANY OTHER PROVISION OF THIS SECTION, THE IDENTITY OF AN ORIGINAL SOURCE THAT IS OTHERWISE PROTECTED FROM DISCLOSURE BY LAW OR A COURT ORDER OR THAT DEMONSTRATES TO THE SATISFACTION OF THE COMMISSION THAT THERE IS A REASONABLE PROBABILITY THAT PUBLIC KNOWLEDGE OF THE ORIGINAL SOURCE'S IDENTITY WOULD SUBJECT THE SOURCE OR THE SOURCE'S FAMILY TO A SERIOUS RISK OF PHYSICAL HARM SHALL NOT BE DISCLOSED OR INCLUDED IN A DISCLAIMER.

G. THIS SECTION DOES NOT REQUIRE PUBLIC DISCLOSURE OF OR A DISCLAIMER REGARDING THE IDENTITY OF AN ORIGINAL SOURCE THAT CONTRIBUTES, DIRECTLY OR THROUGH INTERMEDIARIES, $5,000 OR LESS IN MONIES OR IN-KIND CONTRIBUTIONS DURING AN ELECTION CYCLE TO A COVERED PERSON FOR CAMPAIGN MEDIA SPENDING.

H. ALL DISCLOSURE REPORTS MADE PURSUANT TO THIS SECTION SHALL BE MADE ELECTRONICALLY TO THE SECRETARY OF STATE AND TO ANY OTHER BODY AS DIRECTED BY

LAW. OFFICIALS SHALL PROMPTLY MAKE THE INFORMATION PUBLIC AND PROVIDE IT TO THE COMMISSION ELECTRONICALLY. ALL DISCLOSURE REPORTS ARE SUBJECT TO PENALTY OF PERJURY.

I. EXCEPT AS PROVIDED IN SUBSECTION J OF THIS SECTION, A POLITICAL ACTION COMMITTEE OR POLITICAL PARTY THAT IS A COVERED PERSON MAY SATISFY THE TIMING REQUIREMENTS FOR REPORTING IN THIS SECTION BY FILING THE PERIODIC CAMPAIGN FINANCE REPORTS AS REQUIRED BY LAW FOR POLITICAL ACTION COMMITTEES AND POLITICAL PARTIES, PROVIDED THAT THE DISCLOSURES REQUIRED BY THIS SECTION ARE INCLUDED IN THOSE PERIODIC REPORTS, INCLUDING THE REQUIREMENT TO IDENTIFY THE ORIGINAL SOURCES OF TRACEABLE MONIES WHO GAVE, DIRECTLY OR INDIRECTLY, AND ANY INTERMEDIARIES WHO TRANSFERRED, DIRECTLY OR INDIRECTLY, MORE THAN $5,000 IN TRACEABLE MONIES TO THE COVERED PERSON DURING THE ELECTION CYCLE.

J. IF A POLITICAL ACTION COMMITTEE OR POLITICAL PARTY THAT IS A COVERED PERSON SPENDS MONIES OR ACCEPTS IN-KIND CONTRIBUTIONS WITHIN 20 DAYS OF AN ELECTION THAT WOULD REQUIRE A REPORT UNDER THIS SECTION, IT SHALL FILE A REPORT PURSUANT TO THIS SECTION WITHIN 3 DAYS OF THAT SPENDING OR IN-KIND CONTRIBUTION.

**16-974. Citizens clean elections commission; powers and duties; rules**

A. THE COMMISSION IS THE PRIMARY AGENCY AUTHORIZED TO IMPLEMENT AND ENFORCE THIS CHAPTER. THE COMMISSION MAY DO ANY OF THE FOLLOWING:
  1. ADOPT AND ENFORCE RULES.
  2. ISSUE AND ENFORCE CIVIL SUBPOENAS, INCLUDING THIRD-PARTY SUBPOENAS.
  3. INITIATE ENFORCEMENT ACTIONS.
  4. CONDUCT FACT-FINDING HEARINGS AND INVESTIGATIONS.
  5. IMPOSE CIVIL PENALTIES FOR NONCOMPLIANCE, INCLUDING PENALTIES FOR LATE OR INCOMPLETE DISCLOSURES AND FOR ANY OTHER VIOLATIONS OF THIS CHAPTER.
  6. SEEK LEGAL AND EQUITABLE RELIEF IN COURT AS NECESSARY.
  7. ESTABLISH THE RECORDS PERSONS MUST MAINTAIN TO SUPPORT THEIR DISCLOSURES.
  8. PERFORM ANY OTHER ACT THAT MAY ASSIST IN IMPLEMENTING THIS CHAPTER.

B. IF THE COMMISSION IMPOSES A CIVIL PENALTY ON A PERSON AND THAT PERSON DOES NOT TIMELY SEEK JUDICIAL REVIEW, THE COMMISSION MAY FILE A CERTIFIED COPY OF ITS ORDER REQUIRING PAYMENT OF THE CIVIL PENALTY WITH THE CLERK OF THE SUPERIOR COURT IN ANY COUNTY OF THIS STATE. THE CLERK SHALL TREAT THE COMMISSION ORDER IN THE SAME MANNER AS A JUDGMENT OF THE SUPERIOR COURT. A COMMISSION ORDER FILED PURSUANT TO THIS SUBSECTION HAS THE SAME EFFECT AS A JUDGMENT OF THE SUPERIOR COURT AND MAY BE RECORDED, ENFORCED OR SATISFIED IN THE SAME MANNER. A FILING FEE IS NOT REQUIRED FOR AN ACTION FILED UNDER THIS SUBSECTION.

C. THE COMMISSION SHALL ESTABLISH DISCLAIMER REQUIREMENTS FOR PUBLIC COMMUNICATIONS BY COVERED PERSONS. A POLITICAL ACTION COMMITTEE THAT COMPLIES WITH THESE REQUIREMENTS NEED NOT SEPARATELY COMPLY WITH THE REQUIREMENTS PRESCRIBED IN SECTION 16-925, SUBSECTION B. PUBLIC COMMUNICATIONS BY COVERED PERSONS SHALL STATE, AT A MINIMUM, THE NAMES OF THE TOP THREE DONORS WHO DIRECTLY OR INDIRECTLY MADE THE THREE LARGEST CONTRIBUTIONS OF ORIGINAL MONIES DURING THE ELECTION CYCLE TO THE COVERED PERSON. IF IT IS NOT TECHNOLOGICALLY POSSIBLE FOR A PUBLIC COMMUNICATION DISSEMINATED ON THE INTERNET OR BY SOCIAL MEDIA MESSAGE, TEXT MESSAGE OR SHORT MESSAGE SERVICE TO PROVIDE ALL THE INFORMATION REQUIRED BY THIS SUBSECTION, THE PUBLIC COMMUNICATION MUST PROVIDE A MEANS FOR VIEWERS TO OBTAIN, IMMEDIATELY AND EASILY, THE REQUIRED INFORMATION WITHOUT HAVING TO RECEIVE EXTRANEOUS INFORMATION.

D. THE COMMISSION'S RULES AND ANY COMMISSION ENFORCEMENT ACTIONS PURSUANT TO THIS CHAPTER ARE NOT SUBJECT TO THE APPROVAL OF OR ANY PROHIBITION OR LIMIT IMPOSED BY ANY OTHER EXECUTIVE OR LEGISLATIVE GOVERNMENTAL BODY OR OFFICIAL. NOTWITHSTANDING ANY LAW TO THE CONTRARY, RULES ADOPTED PURSUANT TO THIS CHAPTER ARE EXEMPT FROM TITLE 41, CHAPTERS 6 AND 6.1.

E. THE COMMISSION SHALL ESTABLISH A PROCESS TO REIMBURSE THE SECRETARY OF STATE AND ANY OTHER AGENCY THAT INCURS COSTS TO IMPLEMENT OR ENFORCE THIS CHAPTER.

F.  THE COMMISSION MAY ADJUST THE CONTRIBUTION AND EXPENDITURE THRESHOLDS IN THIS CHAPTER TO REFLECT INFLATION.

### 16-975. Structured transactions prohibited

A PERSON MAY NOT STRUCTURE OR ASSIST IN STRUCTURING, OR ATTEMPT OR ASSIST IN AN ATTEMPT TO STRUCTURE ANY SOLICITATION, CONTRIBUTION, DONATION, EXPENDITURE, DISBURSEMENT OR OTHER TRANSACTION TO EVADE THE REPORTING REQUIREMENTS OF THIS CHAPTER OR ANY RULE ADOPTED PURSUANT TO THIS CHAPTER.

### 16-976. Penalties; separate account; use of monies; surcharge

A.  THE CIVIL PENALTY FOR ANY VIOLATION OF THIS CHAPTER SHALL BE AT LEAST THE AMOUNT OF THE UNDISCLOSED OR IMPROPERLY DISCLOSED CONTRIBUTION AND NOT MORE THAN THREE TIMES THAT AMOUNT. FOR VIOLATIONS OF SECTION 16-975, THE RELEVANT AMOUNT FOR THE PURPOSES OF CALCULATING THE CIVIL PENALTY IS THE AMOUNT DETERMINED BY THE COMMISSION TO CONSTITUTE A STRUCTURED TRANSACTION.
B.  CIVIL PENALTIES COLLECTED FOR VIOLATIONS OF THIS CHAPTER SHALL BE DEPOSITED IN A SEPARATE ACCOUNT IN THE CITIZENS CLEAN ELECTIONS FUND ESTABLISHED PURSUANT TO CHAPTER 6, ARTICLE 2 OF THIS TITLE AND USED TO DEFRAY THE COSTS OF IMPLEMENTING AND ENFORCING THIS CHAPTER. ANY MONIES IN THIS ACCOUNT THAT ARE NOT USED TO IMPLEMENT AND ENFORCE THIS CHAPTER MAY BE USED FOR OTHER COMMISSION-APPROVED PURPOSES.
C.  AN ADDITIONAL SURCHARGE OF ONE PERCENT SHALL BE IMPOSED ON CIVIL AND CRIMINAL PENALTIES AND THE PROCEEDS DEPOSITED IN THE ACCOUNT IN THE CITIZENS CLEAN ELECTIONS FUND ESTABLISHED PURSUANT TO SUBSECTION B OF THIS SECTION. THE SURCHARGE SHALL BE SUSPENDED FOR ONE TO THREE YEARS AT A TIME IF THE COMMISSION DETERMINES THAT, DURING THAT PERIOD, IT CAN PERFORM THE ACTIONS REQUIRED BY THIS CHAPTER WITHOUT THE MONIES FROM THE SURCHARGE.

### 16-977. Complaints; investigations; civil action

A.  ANY QUALIFIED VOTER IN THIS STATE MAY FILE A VERIFIED COMPLAINT WITH THE COMMISSION AGAINST A PERSON THAT FAILS TO COMPLY WITH THE REQUIREMENTS OF THIS CHAPTER OR RULES ADOPTED PURSUANT TO THIS CHAPTER. THE COMPLAINT MUST STATE THE FACTUAL BASIS FOR BELIEVING THAT THERE HAS BEEN A VIOLATION OF THIS CHAPTER OR RULES ADOPTED PURSUANT TO THIS CHAPTER.
B.  IF THE COMMISSION DETERMINES THAT THE COMPLAINT, IF TRUE, STATES THE FACTUAL BASIS FOR A VIOLATION OF THIS CHAPTER OR RULES ADOPTED PURSUANT TO THIS CHAPTER, THE COMMISSION SHALL INVESTIGATE THE ALLEGATIONS AND PROVIDE THE ALLEGED VIOLATOR WITH AN OPPORTUNITY TO BE HEARD.
C.  IF THE COMMISSION DISMISSES AT ANY TIME THE COMPLAINT OR TAKES NO SUBSTANTIVE ENFORCEMENT ACTION WITHIN NINETY DAYS AFTER RECEIVING THE COMPLAINT, THE COMPLAINANT MAY BRING A CIVIL ACTION AGAINST THE COMMISSION TO COMPEL IT TO TAKE ENFORCEMENT ACTION, AND THE COURT SHALL REVIEW *DE NOVO* WHETHER THE COMMISSION'S DISMISSAL OR FAILURE TO ACT WAS REASONABLE. IN ANY MATTER IN WHICH THE CIVIL PENALTY FOR THE ALLEGED VIOLATION COULD BE GREATER THAN $50,000, ANY CLAIM OR DEFENSE BY THE COMMISSION OF PROSECUTORIAL DISCRETION IS NOT A BASIS FOR DISMISSING OR FAILING TO ACT ON THE COMPLAINT. A COURT MAY AWARD THE PREVAILING PARTY IN A CIVIL ACTION UNDER THIS SUBSECTION ITS REASONABLE ATTORNEYS' FEES.

### 16-978. Legislative, county and municipal provisions

A.  NOTHING IN THIS ACT PREVENTS THE LEGISLATURE, A COUNTY BOARD OF SUPERVISORS OR A MUNICIPAL GOVERNMENT FROM ENACTING OR ENFORCING ADDITIONAL OR MORE STRINGENT DISCLOSURE PROVISIONS FOR CAMPAIGN MEDIA SPENDING THAN

  THOSE CONTAINED IN THIS CHAPTER. ADDITIONAL OR MORE STRINGENT DISCLOSURE REQUIREMENTS FOR CAMPAIGN MEDIA SPENDING FURTHER THE PURPOSES OF THIS CHAPTER.
 B. TO THE EXTENT THE PROVISIONS OF THIS CHAPTER CONFLICT WITH ANY STATE LAW, THIS CHAPTER GOVERNS.

**16-979. <u>Legal defense; standing; legal counsel</u>**

 A. A POLITICAL ACTION COMMITTEE FORMED TO SUPPORT THE VOTERS' RIGHT TO KNOW ACT OR ANY OF THAT COMMITTEE'S OFFICERS MAY INTERVENE AS OF RIGHT IN ANY LEGAL ACTION BROUGHT TO CHALLENGE THE VALIDITY OF THIS CHAPTER OR ANY OF ITS PROVISIONS.
 B. THE COMMISSION HAS STANDING TO DEFEND THIS CHAPTER ON BEHALF OF THIS STATE IN ANY LEGAL ACTION BROUGHT TO CHALLENGE THE VALIDITY OF THIS CHAPTER OR ANY OF ITS PROVISIONS.
 C. NOTWITHSTANDING ANY LAW, THE COMMISSION HAS EXCLUSIVE AND INDEPENDENT AUTHORITY TO SELECT LEGAL COUNSEL TO REPRESENT THE COMMISSION REGARDING ITS DUTIES UNDER THIS CHAPTER AND TO DEFEND THIS CHAPTER IF ITS VALIDITY IS CHALLENGED.

Sec. 4. <u>Severability</u>

The provisions of this act are severable. If any provision of this act or application of a provision to any person or circumstance is held to be unconstitutional, the remainder of this act, and the application of the provisions to any person or circumstance, shall not be affected by the holding. The invalidated provision or provisions shall be deemed reformed to the extent necessary to conform to applicable law and to give the maximum effect to the intent of this act.

Sec. 5. <u>Applicability; Implementation</u>

 A. If approved by the voters, this act applies to all elections and contributions that occur after the effective date of this act.
 B. If approved by the voters, the Commission shall publicize the requirements of these provisions.
 C. The rights established by this Act shall be construed broadly.

## ANALYSIS BY LEGISLATIVE COUNCIL

  Proposition 211 would amend the campaign finance laws to require a "covered person" (a person or entity that spends $50,000 or more on campaign media for a statewide candidate during a two-year election cycle or that spends $25,000 or more on campaign media for any other type of candidate during a two-year election cycle) to disclose the identity of anyone who is the original source of donations of more than $5,000 to the covered person for campaign media.  Proposition 211 also requires any donor that contributes more than $5,000 to a covered person during an election cycle for campaign media spending to identify to the covered person the identity of any person who contributed more than $2,500 in original money that is being transferred to that donor, as well as any intermediaries that previously transferred the funds being given to the covered person.
  Proposition 211 also provides for the following:
  1. Requires that the covered person's disclosure report to the Secretary of State include the following:
  a. The identity of the person who owns or controls the money being contributed.
  b. The identity of any entity established, financed, maintained or controlled by the person who owns or controls the money being contributed and that maintains its own transfer records.
  c. The name, address and position of the person who is the custodian of the transfer records.
  d. The name, address and position of the person who controls how the money is spent.
  e. The total amount of money donated or promised to be donated to the covered person for use or transfer for campaign media spending on the date the covered person makes the report.
  f. The identity of each donor of original monies who contributed, directly or indirectly, more than $5,000 of money or in-kind contributions for campaign media spending during the election cycle to the covered person, and the date and amount of each donor's contribution.
  2. Requires each covered person to file a supplemental report within three days each time the covered person spends money or accepts in-kind contributions totaling an additional $25,000 for campaign media spending during an election cycle

on statewide campaigns or an additional $15,000 during an election cycle for any other type of campaigns.

3. During the twenty days before an election, requires a political action committee or political party that is a covered person that spends reportable money or receives reportable in-kind contributions to file disclosure reports within three days.

4. Exempts the following from the new disclosure requirements in this measure:

a. Persons or entities that spend only their own personal money or business income.

b. Candidate committees.

c. Political action committees or political parties if they receive not more than $20,000 from any one person or entity during an election cycle.

d. Donors who contribute $5,000 or less directly or indirectly to a covered person.

e. Original sources of contributions that are otherwise protected by law or if the Clean Elections Commission determines that there is a reasonable probability that disclosure of that original source will subject that original source or the original source's family to serious risk of physical harm.

5. Requires disclosures to be electronically filed with the Secretary of State under penalty of perjury and with other officials as provided by law, with the disclosures to be publicly posted.

6. Prohibits a person from attempting to, assisting in or structuring any solicitation, contribution, donation, expenditure, disbursement or other transaction to evade campaign finance reporting requirements.

7. Designates the Clean Elections Commission as the primary agency to implement and enforce this act. Authorizes the Commission to adopt and enforce rules, issue civil subpoenas, initiate enforcement actions, conduct fact-finding hearings and investigations, impose civil penalties for noncompliance and seek legal and equitable relief in court.

8. Requires the Clean Elections Commission to establish requirements for a covered person to name in the campaign media at least the top three donors who made the three largest contributions during the election cycle, except for certain electronic communications when not technologically possible.

9. Requires the Clean Elections Commission's civil penalties to be at least as much as the amount of the improper contribution but not more than three times that amount, and requires penalties to be deposited in the Clean Elections Fund to pay for implementing and enforcing campaign finance laws or for other Commission-approved purposes.

10. Allows any voter to file a complaint with the Clean Elections Commission to enforce this act and provides for an investigation and a hearing. If the Commission dismisses or takes no enforcement action on the complaint, the voter may file a civil action to compel the Commission to take action on the complaint.

11. Provides for an additional 1% surcharge on civil and criminal penalties, to be deposited in the Clean Elections Fund. Allows suspension of the surcharge for one to three years if the Commission determines it can perform its duties under this act without the surcharge.

12. Allows the Legislature and counties, cities and towns to enact more stringent disclosure provisions.

13. Allows the Clean Elections Commission and the proponents of this act to have standing to intervene in or defend any challenge to this act.

14. Gives the Clean Elections Commission authority to select its own attorneys regarding this act.

15. States that the rights established by this act shall be construed broadly.

**Notice:** Pursuant to Proposition 105 (1998), these measures cannot be changed in the future if approved on the ballot except by a three-fourths vote of the members of each house of the legislature and if the change furthers the purpose of the original ballot measure, by an initiative petition or by referring the change to the ballot.

### JOINT LEGISLATIVE BUDGET COMMITTEE FISCAL ANALYSIS
PROPOSITION 211 (I-04)

A.R.S. § 19-123(E) requires the Joint Legislative Budget Committee Staff to prepare a summary of 300 words or less on the fiscal impact of voter-initiated ballot measures. Proposition 211 enacts a 1% surcharge on all fines for criminal offenses and civil violations and implements changes to state laws regarding campaign finance.

The initiative's 1% fine surcharge is projected to increase annual state revenues by $600,000 and these revenues would be deposited into a separate account in the Citizens Clean Elections Fund.

The initiative enacts various requirements regarding campaign finance and disclosure of campaign contributions. These changes are estimated to increase state spending for the Secretary of State's campaign finance database, with an estimated one-time cost of $135,000 for information technology upgrades to accept new reporting required by the initiative. This cost would be paid from the revenues collected from the 1% fine surcharge.

The act requires the Citizens Clean Elections Commission to enforce the new campaign finance requirements. Any new enforcement costs can be paid with the new 1% surcharge revenue.

# ARGUMENTS "FOR" PROPOSITION 211

Vote "YES" on Prop 211 the "Voters' Right to Know Act," also known as Stop Dark Money, if you believe, as we do, that Arizona voters should know who is actually behind political ads.

Voters' Right to Know/Stop Dark Money is a non-partisan group that believes democracy works best when election funding is transparent. We believe that Arizona voters should have the right to know the source of funds spent to influence their votes. Proposition 211 will give us that Right.

Current Arizona law allows unlimited money to be spent on anonymous political ads. Currently, the names and motivations of those actually paying for these ads remains hidden.

Yet, when an Arizona citizen contributes $50 or more to a candidate, they must disclose their name, the amount contributed, home address and employer. This information becomes publicly available and searchable on the internet. But people spending millions on political ads to influence our vote do not have to disclose anything.

We believe knowing who is running political ads is critical to understanding their message and motivation. Without accountability for what is said, those running misleading or inaccurate ads face no consequences and politics becomes dirtier.

Proposition 211 requires any group spending over $50,000 on statewide elections or $25,000 on local elections to disclose the source of all contributions over $5,000. The Citizens Clean Elections Commission will investigate complaints of noncompliance, force disclosure and fine violators.

Stop keeping voters in the dark and shine a light on the secret funders!

Please vote YES on Proposition 211.

Terry Goddard, David Tedesco, Bob Bertrand, Paul Johnson

Co-chairs: Voters' Right to Know

**Voters' Right to Know, Sponsoring Organization, Voters' Right to Know, Phoenix; Terry Goddard, Co-Chair, Voters' Right to Know, Phoenix; David Tedesco, Co-Chair, Voters' Right to Know, Phoenix; Bob Bertrand, Co-Chair, Voters' Right to Know, Phoenix; and Paul Johnson, Co-Chair, Voters' Right to Know, Scottsdale**

---

Dark money happens on all sides of the political fence. Individuals and groups on the Left and the Right that won't tell you who they are, spend vast amounts of money on media advertising trying to influence how you vote.

As an ordinary citizen, if I donate to a candidate's campaign, I must disclose my name, address, and occupation. Yet the names of donors to dark money groups, with names that tell you nothing about what they really believe, like "Americans for Everything Good", are never disclosed. These dark money groups can spend unlimited amounts of money on political ads. They don't care about the citizens of Arizona. They only care about their own (hidden) agenda.

The Voters' Right to Know Act, Proposition 211 doesn't stop any person or group from expressing their opinions. It's about transparency. Period. It's about requiring anonymous, dark money donors to disclose to the public their names and how much they donate, just like the rest of us.

In Citizens United, the Supreme Court ruled that corporations have constitutional rights. But that ruling also said that requiring disclosure of the names of donors who pay for political media advertising is allowed under the First Amendment, that voters should have the right to know who is trying to persuade them to vote one way or the other. The late Justice Scalia, who voted with the majority in Citizens United, was a fierce advocate for transparency. He said: "Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed. For my part, I do not look forward to a society which, thanks to the Supreme Court, campaigns anonymously…. hidden from public scrutiny and protected from accountability of criticism. This does not resemble the Home of the Brave."

**Diane McQueen, Self, Dewey**

---

I have been active in both partisan and nonpartisan organizations in AZ since I moved here in 1966. I have volunteered on many campaigns, both on behalf of candidates and initiatives, some of which were successful and others not. However, I don't think I've volunteered for one campaign where there is as much support – across party lines, age, gender, race, and any other category you can think of -- as for Voters' Right to Know. The clarity and simplicity of this Initiative requires almost no 'persuasion' on my part when I have knocked on doors & gone to events to collect signatures. AZ voters that I've talked to all agree that there should be transparency regarding campaign donations regardless of which type of legal entity

Spelling, grammar and punctuation were reproduced as submitted in the "for" and "against" arguments.

**236**    ARIZONA'S GENERAL ELECTION GUIDE

ARGUMENTS "FOR" PROPOSITION 211

to which you donate, as long as that entity is actively involved in campaigning for or against a candidate or ballot measure. Dark money is NOT acceptable to most Republicans, Independents, Democrats, young & first time voters, folks my age (I'm 84), pro lifers and pro choice folks, etc. They have all told me "put your name where your money goes." Please vote YES on Voters' Right to Know.

**Rivko Knox, Phoenix**

Four score and seven years ago our forefathers brought forth on this continent, a new nation, conceived in Liberty, and dedicated to the proposition that all men [and women] are created equal. – Abraham Lincoln

Now we are engaged in a great... contest over who gets heard and whose interests matter in making and carrying out laws in Arizona. Will we allow Dark Money special interests to continue to drown out the voice of the PEOPLE?

The world might little note, nor long remember what we each say on our sacred and secret ballots. But we have a chance to make sure the world can never forget when Arizona voters enact into law the Stop Dark Money aka The People's Right to Know initiative.

It is for us, the civic minded voters of Arizona, to dedicate ourselves to the proposition that our children and grandchildren will be able to know by experience what Lincoln meant (and I paraphrase) when he closed the Gettysburg address declaring that we now emphatically resolve that this nation and state, under God, shall have a new birth of freedom—that government of the people, by the people, for the people, shall not perish from the earth.

Further, as Suffragette Susan B. Anthony, whose passion and perseverance was rewarded finally when the 19th Amendment was ratified in 1920, 20 years after her death, stated – Wherever women gather together failure is impossible.

Let your action in this election be a tribute to both Anthony and Lincoln.

Steve Muratore, publisher, Arizona Eagletarian blog https://stevemuratore.blogspot.com

**Steve Muratore, Publisher, Arizona Eagletarian (blog), Scottsdale**

I will vote YES on the "Voter's Right To Know Act." I am retired and had a great career in health care and I raised 3 kids. Any time my kids showed up with money or things that I didn't know where they came from, I asked them, "Who gave it to you? How'd you get it? What did they want in return?" I had to protect them from drugs and danger and teach them about influencers. I ask my politicians the same things. Because, I have to still protect my kids, grandkids and communities from dangerous and unscrupulous elements. Recently we saw undocumented dollars try to influence people's votes in the Phoenix Light Rail Extension vote. I and my neighbors in the Payson region had our APS rates increase. Of course after APS put 10 Million Undocumented dollars into candidates campaigns. I felt ambushed. So did the retirees on fixed incomes.
Things were no different when I led healthcare organizations. I always needed to know who was providing money, free trips, supplies, free seminars to influence our medical staff referrals and decisions. Containing expenses and remaining in compliance with federal and state laws required it be done.
Bottom line, I support transparency. I like sunshine on things. I live with smart family members and wise neighbors. They and I need to know what we're buying into when we vote. To do that, we need to know for what the dark money spenders are paying. Help us all out by voting YES

**Gary Brennan, LFACHE, Retired, Tempe**

Please Vote for Transparency: Vote Yes on Proposition 211, the Voters' Right to Know Act

Dark money is political spending on election advertising by anonymous sources. It is called "Dark Money" because we can't see who's sponsoring the messages in political ads.

Under current Arizona law, rich power brokers get special treatment and unduly influence elections by secretly spending money on advertisements and promotions supporting their candidate or ballot proposition. This "Dark Money" bombards voters with negative ads, misleading information, and even outright lies.

Because we don't know who's paying for the advertisements, ordinary people don't have the information they need to figure out whether it's credible or not. It's like my grandmother used to always say… "According to whom?" Well, with Dark Money dominating our elections, we can't answer that question for ourselves.

Spelling, grammar and punctuation were reproduced as submitted in the "for" and "against" arguments.
ARIZONA'S GENERAL ELECTION GUIDE    237

ARGUMENTS "FOR" PROPOSITION 211

Proposition 211 will fix that. It simply builds transparency into our political system by requiring ALL major contributors to identify themselves if they spend more than $5,000 for a campaign or candidate.

Elections have profound impacts on public health and policy– good and bad. Persons that get elected to public office at the federal state and local level routinely make decisions that influence public health. They appoint people for key jobs (we saw how important that was during the pandemic). They also make funding decisions that impact public health.
In short, elections have a significant impact on public health. That's why it's super important to have an informed electorate, so people can make informed decisions about what they decide in the ballot box- whether it's a person running for elected office at the state, federal, or local level- or whether it's about a voter initiative.

Please cast your vote for Transparency. Vote YES on Proposition 211.

**Will Humble, Director, Arizona Department of Health Services (2009-2015), Phoenix**

Fellow Voters;

Please vote YES on the Voters' Right to Know Act.

You will hear some weak arguments from pro-dark money groups about their desire to hide their corrupting campaign spending.

Dark money spending has never been a tradition in America and only those who want to rig our political system argue for it today.

They, for instance, point to a Supreme Court case called NAACP vs Alabama to argue that people should hide their money in political campaigns in order to protect themselves from threats and intimidation.

That is not what that case was about. That case was about keeping membership lists private, not political contributions. Further, even our conservative Supreme Court has continued to uphold the right of public disclosure in political campaigns.

As the very conservative Justice Scalia said, "There are laws against threats and intimidation; and harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed."

He continued, "For my part, I do not look forward to a society which, thanks to the Supreme Court, campaigns anonymously and even exercises the direct democracy of initiative and referendum hidden from public scrutiny and protected from the accountability of criticism. This does not resemble the Home of the Brave."

The real intimidation to our democracy is coming from dark money. When I was a lawmaker, fellow legislators told me personally how they had been threatened with dark money if they did not vote a certain way on legislation.

Voting in favor of this Proposition is the first step to begin to repair the wounds inflicted by an acidic political system.

Ken Clark,
Former Legislator, Phoenix

**Ken Clark, Former Legislator, Phoenix**

The League of Women Voters of Arizona strongly supports this initiative which will force campaigns to reveal the sources of "dark money. " Groups that currently can legally refuse to disclose their donors would have to reveal the original source of funds used to purchase media advertising. Voters should have the right to know which special interests are trying to influence election outcomes by purchasing ads. This initiative will provide that right if passed by Arizona voters.

A "yes" for this measure will require any person spending over $50,000 on statewide campaigns, or $25,000 on other campaigns, to disclose the original sources (people or corporations) of contributions exceeding $5,000. They must also disclose their largest donors in their campaign materials. The Citizens Clean Elections Commission, a non-partisan, voter-established body, will enforce this Act. Violations could incur substantial penalties.

The League of Women Voters of Arizona believes democracy should be protected from distortion by undisclosed

ARGUMENTS "FOR" PROPOSITION 211

Spelling, grammar and punctuation were reproduced as submitted in the "for" and "against" arguments.
**238**        ARIZONA'S GENERAL ELECTION GUIDE

individuals and corporations buying media in election campaigns to persuade voters. The League supports the public's right to know the source of money spent on advertising to influence voters.

It is time to stop "dark money," the practice of laundering political contributions to hide the original source.

THE LEAGUE OF WOMEN VOTERS OF ARIZONA URGES YOU TO VOTE YES.

**Pinny Sheoran, President, League of Women Voters of Arizona, Phoenix**
*Sponsored by League of Women Voters of Arizona*

We as Arizona voters are constantly deluged with campaign TV ads and printed material that feature misleading disclaimers that begin with "Paid for by _____". These mentioned organizations are often simply vehicles behind which rich corporations or super PACs hide. Sadly, current Arizona election laws do not require that the ORIGINAL source of campaign funds be identified in campaign ads. As a result, voters have no way of knowing what person or special interest group is providing huge amounts of funding to candidates who then carry an unspoken obligation to do the bidding of their benefactor. We saw this dynamic in the previous election, when newly elected Corporation Commission members went about thanking APS for their millions in donated funds with their generous voting decisions. And since APS had been able to make their campaign contributions to the pair anonymously, the public didn't find out about this deception until years later, after it was too late to make an informed vote. We see it all the time. And this kind of corruption will continue to flourish in Arizona until we as voters pass the Voters' Right to Know Act and demand to be able to see, in all election campaign advertising, exactly who is behind a candidate before we decide to vote for that person.

**Kelly Gibbs, Arizona Voter, Flagstaff**

I support Proposition 211, The Voter's Right to Know, as it is time we stop the spending of Dark Money from anonymous sources spent to influence our vote. Voters need and deserve the transparency behind political advertising in order to make informed political decisions. Dark Money allows organizations to hid behind a cloak of secrecy and engage in false, negative, and misleading political advertising. It is important that these political influencers come out of the shadows and provide names and addresses and amounts behind their contribution just like we ordinary citizens must do when we contribute to a campaign. Proposition 211 furthers our democracy by allowing informed voter decisions.

**Patrice Horstman, Supervisor, Coconino County Board of Supervisors, Flagstaff**

I'm voting YES on Proposition 211 because Arizona voters have a right to know who is spending money to influence their votes.

Proposition 211 sheds a light on anonymous, dark money that gets spent every election cycle to run negative (and oftentimes false) attack ads.

I have to disclose my donations to campaigns, why should a few dark money power brokers get special treatment? Why should they get to hide their donations behind innocuous sounding campaign names like "Citizens for a Bright Future" and then bombard us with lies and misstatements?

When we know who the messenger is, we get to carefully consider their credibility.

Just like you, I want fair and clean elections in Arizona. We want to know who is trying to influence our votes. Afterall, our votes are our voices.

Let's help make sure that Arizona voters have a chance to make informed decisions at the ballot box.

Let's get hidden, dark money out of Arizona's politics. Please join me in voting YES on Proposition 211.

**Becky Daggett, Flagstaff**

Please join me in supporting Prop 211, the Voter's Right to Know (Stop Dark Money) initiative. I personally know what terrible things can happen when Dark Money is used in campaigns. In 2014, when I ran for re-election to the Corporation Commission, millions of dollars in libelous Dark Money television ads were run against me, dominating the airwaves. It was like a mortar shelling in a war zone; we did not know who was doing it, and there was no way to respond legally or financially when you are a Clean Elections candidate like me. Who do you sue when they hide behind anonymity? My

Spelling, grammar and punctuation were reproduced as submitted in the "for" and "against" arguments.
ARIZONA'S GENERAL ELECTION GUIDE

ARGUMENTS "FOR" PROPOSITION 211

**239**

campaign staff even got threatening anonymous phone calls. When they thought they would never be found out, the level of cowardice on their part was appalling, saying things in their ads that they would never say if their identity was known.

When I was re-elected in 2018, I set out to discover who was behind this Dark Money spending. I subpoenaed Pinnacle West/APS about all of its political spending. Through that subpoena, I uncovered millions in their dark money spending. Not only did my subpoena lay bare the millions of dollars used against me, it forced Pinnacle West/APS to disclose its influence peddling through its other Dark Money spending. On the heels of their 2014 Dark Money spending, there was an enormous rate increase and confusing rate plans for APS customers to choose from, proving that Dark Money takes money out of people's pockets. The $10 million in Dark Money spending seems to have netted Pinnacle West/APS record profits, at the expense of consumers.

The Stop Dark Money ballot initiative will provide the Transparency that all elections should have in a democracy. Please support it with your vote!

**Sandra Kennedy, Corporation Commissioner, Arizona Corporation Commission, Phoenix**

8 years ago, I published a series of investigative reports on the dark money which flooded Arizona's 2014 gubernatorial and Corporation Commission elections. Much of that money was provided by regulated utility APS, and it very likely made the difference in who was elected. (E.g. http://bit.ly/50ShadesOfDarkMoneyArchive) Stop Dark Money will help shine a light on any similar dark efforts in the future. With this transparency, Arizonans will have more confidence in our electoral system, and will worry less that shadowy forces are manipulating our votes (and our system)!

Please join me in voting YES to Stop Dark Money!

**Paul Weich, Candidate, AZ House, LD12, Phoenix**

I have volunteered to support the Stop Dark Money initiative for several years now. This is a common-sense issue that has strong support among Arizonans regardless of political party because we all benefit from transparency in our elections. Dark money allows wealthy donors--many of whom are out of state--to have an outsized influence on our state and local elections with no accountability. This law will not prevent anyone from donating to support candidates or ballot measures, but it will allow voters to see where major funding is coming from, thus allowing us all to make more informed choices on Election Day. Besides this, anonymity removes accountability. If major donors are required to identify themselves, campaigns will be held to a higher level of accuracy and civility. We've all seen too many misleading and hostile campaign ads, and the Voters' Right to Know Act will encourage campaigns to support their causes and candidates with civil discourse rather than lies and attacks. Arizona needs clean and transparent campaigns, and we need it now.

**Michael Rulon, Flagstaff**

ARGUMENTS "FOR" PROPOSITION 211

240

Spelling, grammar and punctuation were reproduced as submitted in the "for" and "against" arguments.
ARIZONA'S GENERAL ELECTION GUIDE

# ARGUMENTS "AGAINST" PROPOSITION 211

Prop 211 is Unconstitutional and will Make Cancel Culture Worse

We urge the voters of Arizona to reject proposition 211, an unconstitutional measure designed to silence and harass private citizens, organizations, and non-profit groups for exercising their first amendment rights.

One of the bedrock principles our country was founded upon was the right to free speech, which includes being able to support causes and issues they believe in without fear of harassment and intimidation. Just last year the US Supreme affirmed this right, declaring that any effort to require non-profit organizations to publish the names of their donors and supporters is unconstitutional.

Yet Prop 211 ignores the first amendment and would attempt to implement a draconian disclosure scheme that would be impossible for any group to comply with and would immediately lead to litigation. Even more offensive is that the measure would not apply to the media, big tech or to the labor unions, which have a specific carve-outs in Prop 211 that exempts them from the disclosure requirements.

In effect, Prop 211 is designed to target citizens whom the drafters of the measure do not like, simply because they have beliefs and values with which they do not agree. They want the names of private citizens so that they can doxx, harass and cancel them in their communities. And they intend to use their friends in Big Tech and the Corporate Media (which are exempt from this initiative) to aid them in their quest.

We do not need another unconstitutional law on the books that will only make cancel culture worse. Vote No on Prop 211.

**Scot Mussi, President, Arizona Free Enterprise Club, Gilbert**
*Sponsored by Arizona Free Enterprise Club*

---

Don't let the title fool you; this initiative is about bullying some citizens out of campaign involvement. Proponents of the "Voter's Right to Know Act" would like you to think deep pockets on only one side of an issue or one party are funding campaigns. In truth, folks on all sides exercise their free speech rights by contributing to campaigns with which they agree.

The difference is how some want to name the contributors in an effort to force a boycott, bully, and otherwise silence the speech of those with whom they disagree. The desired effect is to scare contributors out of donating to campaigns, while their own donors virtue signal by touting their donations to woke causes.

The hypocritical nature of this initiative is apparent in the fact that it demands disclosure from private groups, but big tech, corporate media, and labor unions are all exempt. Ironic that all those exempted favor one party over the other.

All citizens should be free to put their money and effort behind campaigns they support without the risk of conspired retaliation by those in opposition.

The measure is also likely unconstitutional. The U.S. Supreme Court has already ruled that campaign contributions are free speech.

Please vote NO.

**Cathi Herrod, President, Center for Arizona Policy Action, Phoenix**

---

Spelling, grammar and punctuation were reproduced as submitted in the "for" and "against" arguments.
ARIZONA'S GENERAL ELECTION GUIDE                                                                                    241

ARGUMENTS "AGAINST" PROPOSITION 211

# BALLOT FORMAT

### PROPOSITION 211

**PROPOSED BY INITIATIVE PETITION RELATING TO THE DISCLOSURE OF THE ORIGINAL SOURCE OF MONIES USED FOR CAMPAIGN MEDIA SPENDING**

**OFFICIAL TITLE**
AMENDING TITLE 16, ARIZONA REVISED STATUTES BY ADDING CHAPTER 6.1; RELATING TO THE DISCLOSURE OF THE ORIGINAL SOURCE OF MONIES USED FOR CAMPAIGN MEDIA SPENDING.

**DESCRIPTIVE TITLE**
THE LAW WOULD REQUIRE ENTITIES AND PERSONS SPENDING OVER $50,000 ON STATEWIDE CAMPAIGNS OR $25,000 ON OTHER CAMPAIGNS, NOT INCLUDING PERSONAL MONIES AND BUSINESS INCOME, TO DISCLOSE THE ORIGINAL DONOR OF CONTRIBUTIONS OVER $5,000; AND CREATE ADDITIONAL REPORTING AND ENFORCEMENT PROVISIONS.

| | |
|---|---|
| A "YES" vote shall have the effect of requiring additional disclosures and reporting by entities and persons whose campaign media spending and/or in-kind contributions for campaign media spending exceeds $50,000 in statewide campaigns or $25,000 in other campaigns, including identifying original donors of contributions of more than $5,000 in aggregate; creating penalties for violations of the law; and allowing the Citizens Clean Elections Commission to adopt rules and enforce the provisions of the law. | **YES** ☐ |
| A "NO" vote shall have the effect of retaining existing law on campaign finance reporting requirements. | **NO** ☐ |