**KRISTIN K. MAYES**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Alexander W. Samuels (No. 028926)
Nathan T. Arrowsmith (No. 031165)
Shannon Hawley Mataele (No. 029066)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
Phone: (602) 542-3333
Alexander.Samuels@azag.gov
Nathan.Arrowsmith@azag.gov
Shannon.Mataele@azag.gov
ACL@azag.gov

*Attorneys for Proposed Intervenor*
*Arizona Attorney General Kristin K. Mayes*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Americans for Prosperity; Americans for Prosperity Foundation,<br><br>Plaintiffs,<br>v.<br><br>Damien R. Meyer, in his official capacity as Chairman of the Citizens Clean Elections Commission; *et al.*,<br><br>Defendants, | No. 2:23-cv-00470-ROS<br><br>**MOTION TO DISMISS**<br><br>(Assigned to the Honorable Roslyn O. Silver) |

The Attorney General concurs with and joins in the motion to dismiss filed by Defendants Damien Meyer, Galen Paton, Amy Chan, Mark Kimble, Steve Titla, and Thomas Collins (the "Commission") as well as the proposed motion to dismiss submitted

by proposed intervenor Voters' Right to Know PAC (the "PAC"), because Plaintiffs' complaint fails to state a claim upon which relief may be granted and should be dismissed. Mindful that the Commission and the PAC have already submitted thorough briefs, the Attorney General sets forth a brief summary of issues and adds a few observations in an effort to cut through the noise of Plaintiffs' convoluted complaint.[1]

## I.   Brief Summary of Issues

The Complaint contains two counts:

- Count I, captioned as "**First Amendment (Chilling Protected Speech)**," asserts that the Voters' Right to Know Act (the "Act") is unconstitutional on its face and as applied to Plaintiffs.
- Count II, captioned "**First Amendment (Compelled Association)**," also asserts facial and as applied challenges.

The Commission (Doc. 23) and the PAC (Doc. 22-2) each submitted motions to dismiss on April 28, 2023 – respectively, the "Commission Motion," and the "PAC Motion."

### A.   Plaintiffs' facial challenges fail as a matter of law.

Plaintiffs try to muddy the waters, but these are the relevant standards by which their claims must be assessed. First, to sustain a facial challenge, Plaintiffs must show:

- that **no set of circumstances exists under which the Act is valid**, or
- that the Act **lacks a plainly legitimate sweep**.

*See* Part II. b, *infra*. Plaintiffs do not and cannot meet this burden.

Next, in assessing Plaintiffs' facial challenge, the Court must apply **exacting scrutiny**, looking at whether:

- The Act has **a substantial relation with a sufficiently important government interest**.
- The Act **is narrowly tailored to achieve the government's interest** (it

---

[1] The Attorney General joined in the notice provided to Plaintiffs by the Commission pursuant to LRCiv. 12.1(c). Doc. 24.

2

need not be the least restrictive means).

See Part II. b, *infra*. The Act meets these requirements, and Plaintiffs' speculative facial challenges must be dismissed.

***The Act is substantially related to an important government interest*** – Courts have long recognized that governments have a strong interest in informing voters about who funds political advertisements and a compelling interest in preserving the integrity of elections. Commission Motion at 5; PAC Motion at 5-6.

***The Act is narrowly tailored*** – The Act only applies to entities that spend more than $50,000 on statewide campaigns or $25,000 on other campaigns. Only donors who give more than $5,000 are disclosed and donors may opt out of having their donations used for campaign media spending. Courts have upheld disclosure laws with far lower reporting thresholds, including laws requiring disclosure of "secondary contributors." Commission Motion at 6-7; PAC Motion at 7.

***The Act is not overbroad, underinclusive, or burdensome*** – The Act applies only to campaign media spending, and the definition used in the Act mirrors other campaign disclosure laws that have been upheld. Commission Motion at 10-12; PAC Motion at 10-11. Unions are treated like any other membership organization under the Act, and the Act's exclusions for news stories, commentaries, and editorials mirrors federal campaign finance law. Commission Motion at 12; PAC Motion at 13-14. Tech companies have no exemption under the Act. PAC Motion at 14.

***The Act does not compel association*** – Plaintiffs' allegations regarding compelled association are speculative and are not sufficient to prevail on a facial challenge. Commission Motion at 16-17.

**B.** **Plaintiffs' as-applied challenges are insufficiently pled and fail.**

Plaintiffs have pleaded no facts alleging that any of their donors have been subjected to harassment, threats, or violence in Arizona, originating in Arizona, or in any way related to Arizona campaign media spending. Commission Motion at 15-16; PAC Motion at 16-17. Neither have they pleaded any facts showing that they or any of their

donors have been or could be forced to associate with an organization. *Id.* Plaintiffs' speculative, hypothetical allegations are not sufficient, and their as-applied challenges must be dismissed.

**II.    Additional Observations**

As the summary above makes clear, the Commission Motion and the PAC Motion demonstrate that Plaintiffs' Complaint fails to plead claims for relief. The Attorney General joins the Commission and the PAC in asking the Court to dismiss the Complaint and adds the following observations.

**A.    *Bonta* is inapposite.**

Plaintiffs (at ¶ 54) begin to lay out Count I – their "chilling protected speech" claim – by directing the Court to *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), from which they include cherry-picked language throughout the Complaint. It is understandable that Plaintiffs would cite *Bonta*. Plaintiff Americans for Prosperity Foundation was a prevailing party, and the case has language that, when taken out of context, appears to support Plaintiffs' claims here. But the facts and issues in *Bonta* bear little resemblance to this case. *Bonta* is neither an election disclosure case nor a speech case – it is a case about whether a California disclosure requirement that applied to *all* tax-exempt organizations chilled the First Amendment associational rights of potential charitable donors. The law at issue there required *all* tax-exempt organizations to, on an annual basis, "disclose the names and addresses of donors who have contributed more than $5,000 in a particular tax year[.]" 141 S. Ct. at 2380.

The United States Supreme Court upheld an injunction entered by the district court, finding that the disclosure requirement was not sufficiently tailored to California's asserted interest – preventing fraud – and therefore "impose[d] a widespread burden on donors' associational rights." *Id.* at 2388–89. Although the Court noted that California's interest in preventing fraud was important, the Court considered a factual record developed at trial and concluded that the evidence demonstrated that "there was not a single, concrete instance in which [the disclosure requirement] did anything to advance

the Attorney General's investigative, regulatory, or enforcement efforts." *Id.* at 2386. The Court noted that the disclosure requirement chilled associational rights because it "indiscriminately swep[t] up the information of *every* major donor[.]" *Id.* at 2388 (emphasis original).

The Act's disclosure requirements are not broadly applicable, and they are triggered by conduct – only entities that spend more than $50,000 on statewide campaigns or $25,000 on other campaigns must make disclosures under the Act. A.R.S. § 16-973(A). And unlike the broadly applicable disclosure requirement struck down in *Bonta*, courts have repeatedly held that governments have an important (and even compelling) interest in providing voters with information about the sources of campaign funding. *No on E, San Franciscans Opposing the Affordable Housing Prod. Act v. Chiu*, 62 F.4th 529, 539 (9th Cir. 2023) ("Courts have long recognized the governmental interest in the disclosure of the sources of campaign funding[.]") (citing cases).

Plaintiffs' references to *Bonta* may sound relevant, but Plaintiffs fail to explain how an associational rights case considering the validity of a disclosure requirement that applied to ***all*** tax-exempt entities annually in a non-election context is helpful in analyzing whether the Act's election-related disclosure requirements would chill protected speech. The Court should take Plaintiffs' repeated references to *Bonta* with a grain of salt.

**B.  Courts apply exacting scrutiny when reviewing election-related disclosure requirements and set a high bar for facial challenges.**

All parties agree that courts considering First Amendment challenges to disclosure requirements apply exacting scrutiny. *John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010). To survive exacting scrutiny, a disclosure requirement must have a "substantial relation" to a "sufficiently important governmental interest." *Id.* The Ninth Circuit recently applied an additional requirement to its exacting scrutiny analysis of an election disclosure requirement: the disclosure regime must be "narrowly tailored to the government's asserted interest" but need not be "the least restrictive means of achieving their ends." *No on E*, 62 F.4th at 539.

5

Facial challenges are disfavored because – like the Complaint here – they "often rest on speculation." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Additionally, facial challenges "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451. In assessing Plaintiffs' facial challenges, the Court should determine whether Plaintiffs' complaint establishes "that no set of circumstances exists under which the Act would be valid[.]" *Id.* at 449. "[A] facial challenge must fail where the statute has a plainly legitimate sweep." *Id.* (internal quotation marks omitted) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 739–40 (1997) (Stevens, J., concurring in judgments)).

Plaintiffs (at ¶ 56), relying on *Bonta*, advocate a more relaxed standard for facial challenges than the "no set of circumstances" standard articulated in *Grange*. They argue that the Court should uphold their facial challenge as long as "a substantial number of [the Act's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." The Attorney General does not agree that this test is applicable here.

The authority relied upon by the *Bonta* court for this proposition is *United States v. Stevens*, 559 U.S. 460, 477 (2010). *Stevens* was a facial challenge to a content-based speech restriction—specifically, a criminal statute outlawing the "commercial creation, sale, or possession of certain depictions of animal cruelty." *Id.* at 464. The law was found to be invalid because the language was so broad that it captured depictions of lawful conduct that would be protected speech. *Id.* at 481–82. *Stevens* relied upon *Grange*, which mentioned the "substantial number of applications" test in a footnote but did not apply it. *Grange*, 552 U.S. at 449 n.6. The *Grange* footnote in turn cited *New York v. Ferber*, 458 U.S. 747, 769 (1982), which was a challenge to a New York child pornography law – another content-based speech restriction. There, the Supreme Court for the first time concluded that child pornography was not protected by the First Amendment and found that the statute at issue was not substantially overbroad. *Id.* at 764, 773–74.

None of these cases bears any resemblance to *this* case – a facial challenge to a content-neutral election disclosure law. Plaintiffs do not assert that the Act restricts or chills associational rights, and they do not assert the Act is a content-based restriction on protected speech. And Plaintiffs do not direct the Court to any election disclosure case applying the "substantial number of applications" test. Although Plaintiffs' claims fail under either test, there is no reason for this Court to apply the "substantial number of applications" test. The Court should instead dismiss Plaintiffs' facial challenges because Plaintiffs cannot establish that "no set of circumstances exists" under which the Act would be valid and because the Act has a "plainly legitimate sweep." *Grange*, 552 U.S. at 449.

### C. The hypothetical applications of the Act set forth in the Complaint strain credulity.

The Complaint is rife with exaggerated and irrelevant hypotheticals. The Commission Motion (at 6-14) and the PAC Motion (at 7-15) ably dispatch with Plaintiffs' fantasy scenarios and demonstrate that the Act is narrowly tailored to the government's important interest in preserving the integrity of elections and providing voters with information about who is spending money to influence elections. The Attorney General writes separately to address a few additional points.

Plaintiffs (at ¶ 34) make the nonsensical claim that the Act will require commercial banks to disclose all depositors with more than $5,000 in their accounts. Following Plaintiffs down this rabbit hole for a moment, and assuming commercial loans would fall under the Act[2], in order for this far-fetched scenario to arise, Plaintiffs would first need to obtain a commercial loan from a bank. If Plaintiffs intended to use the loan funds for campaign media spending *and* they anticipated spending more than $50,000 for a

---

[2] The Attorney General takes no position as to whether funds received as a commercial loan would be covered by the Act because it is unnecessary to address this fanciful hypothetical before the Act has even been implemented. But the Attorney General notes that commercial loans are excluded from the definition of contribution under Arizona's campaign finance laws. *See* A.R.S. § 16-911(B)(6)(d) ("An extension of credit" that is "substantially similar to extensions of credit to nonpolitical debtors . . . of similar risk and size of obligation" is not a "contribution").

7

statewide campaign or more than $25,000 for any other campaign, Plaintiffs would be required, under A.R.S. § 16-972(B), to notify the bank in writing that loan funds may be used or transferred for campaign media spending. The bank would then have 21 days to opt out. *Id.* Even assuming a bank funded such a loan and did not opt out under § 16-972(B), the Act would not require disclosure of the bank's depositors. A commercial bank's funds are likely "business income" because they are "received by [the bank] in commercial transactions in the ordinary course of the [bank]'s regular trade, business or investments." A.R.S. § 16-971(1)(a).

Equally absurd is Plaintiffs' assertion (at ¶ 35) that individuals who volunteer for organizations that give to "covered persons" would somehow end up being disclosed.[3] In-kind contributions only count toward the Act's disclosure threshold if they are "for campaign media spending." A.R.S. § 16-973(A)(6). Jane Doe who volunteers by answering the phone a few hours a week at her church would not somehow be disclosed if her church gave more than $5,000 to a covered person – her volunteer work is not an "in-kind contribution[ ] for campaign media spending." *Id.* In any event, such wildly speculative scenarios are not appropriate for a facial challenge because they ask this Court to "anticipate a question of constitutional law in advance of the necessity of deciding it." *Grange*, 552 U.S. at 450 (quoting *Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)).

Plaintiffs also argue (at ¶ 67) that the Act will require the disclosure of ***too much information*** because it "requires no nexus between any covered donor, on the one hand, and Arizona voters, on the other." Plaintiffs are attempting to invent a "nexus" requirement out of whole cloth. No such requirement exists – the appropriate inquiry is whether the Act is substantially related to a sufficiently important government interest and is narrowly tailored to the asserted interest. *No on E*, 62 F.4th at 538. In fact, the

---

[3] Volunteer services are also excluded from the definition of contribution. A.R.S. § 16-911(B)(1) ("The value of an individual's volunteer services or expenses that are provided without compensation or reimbursement" is not a contribution).

1  Ninth Circuit recently noted that required disclosures of secondary contributors are
2  "substantially related to the governmental interest in informing the electorate" because
3  "the interest in learning the source of funding for a political advertisement extends past
4  the entity that is directly responsible." *Id.* at 541.
5        Plaintiffs (at ¶ 74) further protest that the Act's required disclosures will "mislead"
6  voters by making them think that all disclosed donors "necessarily support all positions
7  advocated by" an organization.  But "Plaintiffs provide no factual basis for their
8  assumption that [Arizona] voters are unable to distinguish between supporting a group
9  that broadcasts a statement and supporting the statement itself." *No on E*, 62 F.4th at 541.
10 This argument is also contrary to "the logic underlying decisions that uphold disclosure
11 and disclaimer requirements," which emphasize that disclosure requirements "further the
12 governmental interest in revealing the source of campaign funding, not ensuring that
13 every donor agrees with every aspect of the message." *Id.*  This argument, which would
14 seemingly apply to virtually any disclosure requirement, does not help Plaintiffs' claims
15 and should be disregarded.
16       Finally, Plaintiffs (at ¶¶ 69-72) direct the Court to two statutes that may involve
17 criminal violations: A.R.S. § 16-1022(B) and 52 U.S.C. § 30122.  Plaintiffs' reference to
18 these statutes is a red herring.  Neither of these statutes is relevant to the question before
19 the Court: whether the Act is sufficiently tailored to the important government interest
20 advanced by the Act – informing voters who is ultimately paying for campaign media
21 spending.  In addition, Plaintiffs point to no authority providing that the existence of
22 statutes that may impose criminal penalties for making campaign contributions in the
23 name of another forecloses a government's ability to require disclosures of election-
24 related spending.  Instead, courts have "repeatedly recognized an important (and even
25 compelling) informational interest" underlying election disclosures.  *No on E*, 62 F.4th at
26 540 (quoting *Family PAC v. McKenna*, 685 F.3d 800, 806 (9th Cir. 2012)).  Such
27 disclosures enable "the electorate to make informed decisions and give proper weight to
28 different speakers and messages." *No on E*, 62 F.4th at 540 (quoting *Citizens United v.*

*Fed. Election Comm'n*, 558 U.S. 310, 371 (2010)).

### III. Conclusion

When Plaintiffs' far-fetched, speculative scenarios are stripped away, what's left is a Complaint that fails to meet the high bar set for facial constitutional challenges. And Plaintiffs fail to plead facts sufficient to sustain their as-applied challenges. For the reasons set forth above, in the Commission Motion, and the PAC Motion, the Court should dismiss the Complaint.

RESPECTFULLY SUBMITTED this 3rd day of May, 2023.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By: */s/ Nathan T. Arrowsmith*

Alexander W. Samuels
Nathan T. Arrowsmith
Shannon Hawley Mataele
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Fax: (602) 542-8308
Alexander.Samuels@azag.gov
Nathan.Arrowsmith@azag.gov
Shannon.Mataele@azag.gov
ACL@azag.gov

*Attorneys for Proposed Intervenor*
*Kristin K. Mayes and State of Arizona*