Daniel J. Adelman (011368)
Chanele N. Reyes (034898)
Arizona Center for Law in the Public Interest
352 E. Camelback Rd., Suite 200
Phoenix, AZ 85004
(602)248-8850
danny@aclpi.org
chanele@aclpi.org

David Kolker* (DC Bar # 394558)
Tara Malloy* (DC Bar # 988280)
Elizabeth D. Shimek* (WI Bar # 1095937)
Campaign Legal Center Action
1101 14th St., NW, Suite 400
Washington, DC 20005
(202)736-2200
dkolker@campaignlegalcenter.org
tmalloy@campaignlegalcenter.org
eshimek@campaignlegalcenter.org
*Appearing *Pro Hac Vice*

*Attorneys for Voters' Right to Know*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Americans for Prosperity**, et al.,<br>    Plaintiffs,<br><br>vs.<br><br>**Damien R. Meyer**, in his official capacity as Chairman of the Citizens Clean Elections Commission, et al.,<br>    Defendants. | Case No. 2:23-CV-00470-ROS<br><br>**PROPOSED INTERVENOR VOTERS' RIGHT TO KNOW'S REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>(Assigned to the<br> Honorable Roslyn O. Silver) |

Proposed Intervenor Voters' Right to Know ("VRTK") respectfully submits this reply brief in support of its motion to intervene (Doc. 22) and requests that the Court grant VRTK intervention as a defendant as a matter of right in this action under Federal Rule of Civil Procedure 24(a)(2), or in the alternative, grant VRTK intervention under Rule 24(b).

**I.      VRTK meets the requirements for intervention under Fed. R. Civ. P. 24(a)(2).**

VRTK has a right to intervene under Fed. R. Civ. P. 24(a)(2) because it satisfies the relevant four criteria: (1) the motion must be timely; (2) the applicant must have a protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2200-01 (2022); *Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d 1173, 1177 (9th Cir. 2011). In their opposition to VRTK's motion to intervene, Plaintiffs do not dispute VRTK's showing (Doc. 22 at 3-5) that it fulfills the first three prongs of this test. Instead, Plaintiffs contest (Doc. 31 at 4-5) only whether VRTK satisfies the fourth prong. But under *Berger*, VRTK clearly satisfies this fourth criterion.

**A.      As a matter of law, there is no presumption here that the state defendants adequately represent VRTK's interests.**

In their opposition to VRTK's motion to intervene, Plaintiffs ignore the most important basis for VRTK's right to intervene: the plain text of Proposition 211 (Voters' Right to Know Act) expressly provides that right. It states:

> A political action committee formed to support the [V]oters' [R]ight to [K]now [A]ct or any of that committee's officers may intervene as of right in any legal action brought to challenge the validity of this chapter or any of its provisions.

A.R.S. § 16-979(A). Plaintiffs do not question that VRTK is such a committee. This key fact distinguishes this case from every precedent upon which Plaintiffs rely.

Citing *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), for example, Plaintiffs describe (Doc. 31 at 5) a presumption against intervention when "the government is acting on behalf of a constituency it represents," absent a "very compelling showing" that the

1

government will not adequately represent the intervenor's interests. But that presumption does not apply when a state law specifically designates an agent to intervene in a case challenging a state statute.

In *Berger*, the Supreme Court recently analyzed Rule 24(a)(2)'s application to a state statute that provided a right to intervene to leaders of North Carolina's two legislative houses. Because of that specific statutory designation, the Court rejected the application of any presumption that such agents' interests would be adequately represented by other government officials: "Any presumption against intervention is *especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests." 142 S. Ct. at 2204-05. Here, it is indisputable that the voters of Arizona overwhelming selected VRTK to intervene to defend Proposition 211 when they voted 72% in favor of the new law, including section 16-979(A).[1]

The Court in *Berger* further explained:

> Normally, a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions. If the intervenor in *Trbovich* [*v. Mine Workers*, 404 U.S. 528 (1972)], faced only a "minimal" burden, it cannot be that duly designated state agents seeking to vindicate state law should have to clear some higher hurdle.

142 S. Ct. at 2204-05. Indeed, when a state statute has chosen such an agent, "[f]or a federal court to presume a full overlap of interests when a state law more nearly presumes the opposite would make little sense and *do much violence to our system of cooperative federalism*." *Id.* at 2204 (emphasis added).[2]

---

[1] *See* ARIZ. SEC. OF STATE, STATE OF ARIZONA OFFICIAL CANVASS: 2022 GENERAL ELECTION 12 (Dec. 5, 2022 10:00:00 AM), https://azsos.gov/sites/default/files/2022Dec05_General_Election_Canvass_Web.pdf. *See also* Jane Mayer, *A rare win in the fight against dark money*, THE NEW YORKER (Nov. 16, 2022), https://www.newyorker.com/news/news-desk/a-rare-win-in-the-fight-against-dark-money.

[2] *See also* 28 U.S.C. § 1652 ("The laws of the several states . . . shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 71 (1938).

2

Although the facts in *Berger* involved a state's designation of legislators to intervene to defend a state law, the Court's reasoning did not depend on such agents' status as legislators; what mattered was that the state had codified its choice of agents, and that principles of federalism required the federal courts to defer to that choice. Indeed, the union worker granted intervention in *Trbovich*, upon which *Berger* relied in its reasoning, was a private party who had *not* been designated by a state to intervene. Similarly, in dicta in *Arizonans for Official English v. Arizona,* 520 U.S. 43, 65 (1997), the Court discussed, without deciding, the standing of two persons who had sponsored a ballot initiative and for whom the Ninth Circuit had granted intervention. As it would later do in *Berger*, the Court focused on the importance of whether state law had given these persons a right to intervene, which in that case, the state had not: "[W]e are aware of no Arizona law appointing initiative sponsors as agents of the people of Arizona to defend, in lieu of public officials, the constitutionality of initiatives made law of the State." *Id.* Of course, here, section 16-979(A) of Proposition 211 expressly provides what was missing in *Arizonans for Official English*; it states unambiguously that a political committee like VRTK has a "right" to intervene to defend the law.

Not one of the cases upon which Plaintiffs rely involves a state law that designated a particular person or type of person a right to intervene. *See* Doc. 31 at 5, 10-12 (citing *Prete*, 438 F.3d at 956-959*; Gonzalez v. Arizona*, 485 F.3d 1041 (9th Cir. 2007); *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011); *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983)). Thus, none of these authorities supersede the holding and reasoning of the Supreme Court's more recent decision in *Berger*, which requires this Court to presume that the existing defendants will *not* adequately protect VRTK's interests.

**B.    As a matter of fact, the existing defendants may not adequately represent VRTK's interests.**

Even if *Berger* and the express language of A.R.S. § 16-979(A) were not dispositive, VRTK would still satisfy the fourth criterion for intervention as of right.

3

1  Courts consider several factors when making that determination. Those factors include
2  "whether [a present party] will undoubtedly make all of the intervenor's arguments,
3  whether [a present party] is capable of and willing to make such arguments, and whether
4  the intervenor offers a necessary element to the proceedings that would be neglected."
5  *Prete*, 438 F.3d at 956. "The burden of showing inadequacy of representation is minimal
6  and is satisfied if the applicant shows that representation of its interests 'may be'
7  inadequate." *Id*. (internal citations and quotation marks omitted).

8  Despite some overlap, VRTK's interests are not identical with those of the
9  government defendants. As the only non-government representative for the people of
10 Arizona who will benefit from the Act, VRTK seeks to vindicate all three critical interests
11 served by campaign finance laws that the Supreme Court identified in *Buckley v. Valeo*,
12 424 U.S. 1, 66-68 (1976): (1) providing the electorate with information as to where
13 political campaign money comes from to aid voters in evaluating candidates; (2) deterring
14 actual corruption and the appearance of corruption by shining light on large contributions
15 and expenditures, and (3) gathering the data necessary to detect violations of the law.

16 In particular, VRTK is interested in maximizing disclosure, both to vindicate the
17 voters' First Amendment right to know who is spending to influence their votes and to
18 hold officeholders accountable once they are in office. Moreover, even though the
19 Arizona Clean Elections Commission ("Commission") has primary responsibility for
20 detecting violations of the law and remedying them, Proposition 211 gives every qualified
21 voter the right to file a complaint with Commission against a person who has failed to
22 comply with the Act. A.R.S. § 16-977(A). Thus, VRTK and the general public can review
23 the data reported to the Commission to determine whether complaints should be filed.

24 Plaintiffs seek to minimize (Doc. 31 at 8) the divergence of VRTK's and the
25 government defendants' interests, but they do not refute VRTK's explanation (Doc. 22
26 at 6-7) that the Act itself creates a significant split. Proposition 211 specifically permits
27 any qualified Arizona voter to file a verified citizen complaint with the Commission and
28 to bring a civil action if the Commission dismisses the voter's complaint or fails to take

substantive enforcement action within ninety days. A.R.S. § 16-977. The Commission is indeed an independent entity, bound by the law and balanced along party lines, as the Plaintiffs assert; that alone, however, does not prevent government entities from delay, gridlock, or mistakes in interpretation and enforcement of the law. In their Complaint, Plaintiffs themselves allege (Compl. ¶ 80) that section 16-977 means that "innumerable private enforcers . . . may exert pressure on the Commission or urge a judge to 'compel' the Commission go after any disfavored speaker." Thus, especially regarding these provisions, the interests of VRTK and the existing government defendants diverge.[3]

Although Plaintiffs rely upon *Arakaki* in their opposition (Doc. 31 at 2, 5), that case is easily distinguished. The defendants in *Arakaki* already included both state government defendants and private intervenors similarly situated to the proposed intervenor-defendant Hoohuli when the latter attempted to join the case. 324 F.3d at 1087-88. The Ninth Circuit specifically noted that this fact distinguished Hoohuli's situation from other cases in which intervention was permitted. *Id.* In the absence of a prior grant of intervention to another similarly situated non-governmental party, "[the Court has] permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented." *Id*. Here, VRTK, as the only non-governmental entity, is unique among the defendants and the other proposed intervenor, the Attorney General.

### C. VRTK provides distinct, substantial expertise.

Compared with the government defendants, VRTK advocates for a different and more robust conception of the First Amendment interests at stake in this litigation. Thus, the other defendants will not likely raise all of VRTK's arguments. Plaintiffs belabor

---

[3] The Federal Election Campaign Act provides for similar citizen suits if the Federal Election Commission fails to pursue a person's administrative complaint. *See* 52 U.S.C. § 30109(a)(1), (8). That provision has generated significant litigation in recent years. *See*, *e.g.*, *Citizens for Responsibility and Ethics in Wash. v. Am. Action Network*, 590 F.Supp.3d 164 (D.D.C. 2022); *Campaign Legal Ctr. v. Fed. Election Comm'n,* 31 F.4th 781 (D.C. Cir. 2022).

(Doc. 31 at 13) the overlap between arguments raised by VRTK and the defendants, but VRTK has raised distinct First Amendment arguments which the other defendants have not. *See*, *e.g.*, Doc. 22-2 at 4-5 (explaining how disclosure laws further the First Amendment interests of enabling self-government and ensuring responsive officeholders); Doc. 22-2 at 11-13 (discussing how prior Arizona law did not address the dark money problem), and Doc. 22-2 at 8 (arguing that the donor opt-out provision not only makes Proposition 211 narrowly tailored, but also protects the First Amendment interests of donors). These key legal discussions were otherwise left unaddressed by the government defendants, contrary to Plaintiffs' suggestion (Doc. 31 at 12-14) that VRTK solely repeats the arguments of other parties.

Plaintiffs compare (Doc. 31 at 8) this case with *Prete*, but the analogy fails. In *Prete*, the Ninth Circuit found that the Oregon Secretary of State, who was defending the case, possessed extensive pre-existing knowledge regarding the signature gathering process for ballot measures, and that the intervenor-defendants brought no evidence to show that they possessed significant additional expertise. 485 F.3d at 958-59. This case, by contrast, involves a brand-new disclosure regime, which VRTK designed and drafted over several years, and which is new to the government defendants.

In contrast to the rather commonplace knowledge of ballot measure signature collection at issue in *Prete*—a process which the Oregon Secretary of State had previously overseen—the present case involves a new campaign expenditure reporting system. Unique among state disclosure laws, Proposition 211 requires big spenders on election advertising to trace back and disclose the original sources of large contributions used to pay for such electioneering. The targeted traceback requirements, and especially the donor notice and opt-out provisions, are new to the government defendants, but not to VRTK. This committee spent years developing the measure's language and revising it over the course of two prior attempts to get on the ballot before its ultimate success.[4] The other

---

[4] *See* Tristan Richards, *After several tries, Prop 211 backers hope to shine a light on 'dark money,'* KGUN 9 Tucson (Nov. 6, 2022),

6

defendants have acknowledged VRTK's special expertise surrounding dark money in Arizona and Proposition 211, inviting VRTK to take a central role in oral argument on defendants' and intervenor-defendants' motions to dismiss in *Center for Arizona Policy, Inc. v. Arizona Secretary of State*, Case No. CV2022-016564, a state court case challenging the Act.[5] VRTK has also developed educational resources regarding the measure, including a "frequently asked questions" explainer, which VRTK has shared with the public on the internet.[6]

In sum, as a matter of law, it must be presumed that VRTK's interests will not be adequately defended by the existing defendants, and as a matter of fact, Plaintiffs have offered nothing to defeat this presumption. VRTK should be granted intervention as of right.

**II.     Plaintiffs raise no valid objections to granting VRTK permissive intervention.**

Plaintiffs raise three primary points in arguing against permissive intervention for VRTK under Fed. R. Civ. P. 24(b), but all lack merit. First, they argue that VRTK's interests are already adequately represented, but as discussed above, this is incorrect. Second, Plaintiffs assert that VRTK "offers no new evidence or arguments to introduce into the case." Doc. 31 at 12 (quotation marks omitted). This argument has also been refuted above. Finally, Plaintiffs assert (Doc. 31 at 1, 12) that granting intervention would "needlessly complicate and unduly prolong this litigation," but Plaintiffs offer nothing more than speculation to support their claim.

---

https://www.kgun9.com/news/elections/after-several-tries-prop-211-backers-hope-to-shine-a-light-on-dark-money; *see also* Mayer, *supra* n.1.

[5] The court in that case granted VRTK's motion to intervene, and recently denied plaintiffs' request for a preliminary injunction and granted defendants' and defendant-intervenors' motions to dismiss plaintiffs' facial challenge to the Act. Order and Opinion, *Center for Arizona Policy, Inc. v. Arizona Secretary of State*, Case No. CV2022-016564 (Ariz. Sup. Ct., Maricopa Cnty., Jun. 22, 2023), *available at* https://campaignlegal.org/sites/default/files/2023-06/m10466946.pdf.

[6] *See The Voters Right to Know Act — Frequently Asked Questions,* Stop Dark Money (last accessed June 22, 2023), https://www.stopdarkmoney.com/faq.

Plaintiffs chose to file suit against multiple defendants—the members of the Commission, its executive director, and the Secretary of State—and they do not oppose (Doc. 31 at 12) the intervention of the Attorney General. Thus, as a result of Plaintiffs' own decisions, these existing defendants are already filing multiple submissions in defense of the Act; Plaintiffs offer no concrete reason why one additional defendant would needlessly complicate or prolong the case. For example, Plaintiffs have recently filed their omnibus opposition (Doc. 38) to the defendants' and proposed intervenors' motions to dismiss. They received an extension of time to do so and permission to file a 39-page brief. They have not explained why, with these accommodations, they have been unfairly burdened by VRTK's proposed motion to dismiss. Indeed, their omnibus opposition brief has *already* specifically responded to multiple arguments in VTRK's motion to dismiss. Thus, their complaint (Doc. 31 at 14) that allowing VRTK's intervention "will simply provide one side with three-times the number of pages and sets of counsel to respond to Plaintiffs each time, resulting in an unfair advantage," rings hollow.

Plaintiffs also complain (Doc. 31 at 14) that, if they prevail, they "will not be able to recover fees expended for any needless proliferation of briefing, as VRTK is not a government defendant." Setting aside Plaintiffs' unfounded speculation that VRTK would cause "needless" briefing, Plaintiffs cite nothing to support their argument that their ability to recover fees is at all legally relevant to *VRTK's* need to defend its interests and its right to intervene. Courts consider a number of factors in deciding whether to grant permissive intervention, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Perry v. Schwarzenegger*, 630 F.3d at 905 (citations omitted).[7] A plaintiff's ability to recover fees expended during a lawsuit, however, is not a factor recognized by the Ninth Circuit as relevant to whether a defendant should be allowed to intervene. Fee recovery in the United States, after all, is generally available only by the grace of certain statutes, not as an inherent right of all successful litigants.

VRTK's participation will (and already has) "significantly contribute[d] to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id*. In its Proposed Motion to Dismiss (Doc. 22-2 at 1-3), VRTK has already provided significant factual background regarding the history of dark money in Arizona since *Citizens United v. FEC*, 558 U.S. 310 (2010), as well as legal arguments not presented by the government defendants. VRTK has not requested any extensions that were not already requested by other parties and has worked in good faith to ensure the litigation continues swiftly, including by filing for intervention at the earliest opportunity, before any Defendants had even submitted their own responsive pleadings. *See* Doc. 22 at 5-6. VRTK's request for intervention clearly meets the standard set out in *Perry*.

Finally, Plaintiffs assert (Doc. 31 at 14) that "[i]n drafting Proposition 211, VRTK delegated authority under the law to the Commission and the Secretary—and the Commission and the Secretary are now here to defend the law . . ." and that as a result, "VRTK lacks good grounds for participating as an additional intervenor." Plaintiffs cannot have it both ways. If, in drafting Proposition 211, VRTK gave authority to defend the Act to the Commission and the Secretary, it also provided itself with an unconditional right to intervene to defend the Act if challenged in court. A.R.S. § 16-979(A).

## III. Conclusion

For the foregoing reasons, the Court should follow *Berger*, avoid doing "violence

---

[7] Plaintiffs also assert (Doc. 31 at 12 n.4) that VRTK would lack standing to raise the relevant legal issues should VRTK later seek relief that is different from what Defendants urge. In general, however, "an applicant for intervention need not establish Article III standing to intervene." *Perry*, 630 F.3d at 906.

9

to our system of cooperative federalism," 142 S. Ct. at 2204, recognize Arizona voters' choice to authorize VRTK to represent their interests herein, and grant VRTK's motion to intervene.

DATED this 29th day of June, 2023.

ARIZONA CENTER FOR LAW IN
THE PUBLIC INTEREST

Daniel J. Adelman
Chanele N. Reyes
352 E. Camelback Rd., Suite 200
Phoenix, AZ  85012

CAMPAIGN LEGAL CENTER ACTION

*/s/* Tara Malloy
David Kolker (*pro hac vice*)
Tara Malloy (*pro hac vice*)
Elizabeth D. Shimek (*pro hac vice*)
1101 14th St., NW, Suite 400
Washington, DC 20005

*Attorneys for Voters' Right to Know*