Mary R. O'Grady, 011434
James D. Smith, 016760
Emma Cone-Roddy, 034285
Sarah P. Lawson, 036436
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
602-640-9000
mogrady@omlaw.com
jsmith@omlaw.com
econe-roddy@omlaw.com
slawson@omlaw.com

Attorneys for Defendants Damien R. Meyer, Amy B. Chan, Galen D. Paton, Mark Kimble, Steve M. Titla, and Thomas M. Collins

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Americans for Prosperity, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Damien R. Meyer, et al.,<br><br>　　　　　　　Defendants. | Case No. CV-23-00470-PHX-ROS<br><br>DEFENDANTS DAMIEN R. MEYER, AMY B. CHAN, GALEN D. PATON, MARK KIMBLE, STEVE M. TITLA, AND THOMAS M. COLLINS' REPLY IN SUPPORT OF MOTION TO DISMISS |

Despite the Response (Doc. 33) spanning 39 pages, four touchstones summarize why the Complaint does not survive the motions to dismiss:

- The heart of the Response is *Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373 (2021), which Plaintiffs cited at least 34 times. But *Bonta* does not address election advertising or disclosure. It is inapposite to the issues this Court will analyze.

- The handful of election advertising cases Plaintiffs cite are nothing like Prop. 211. Those dissimilarities explain why Plaintiffs never try to analogize those few invalidated laws to Prop. 211.

- Plaintiffs ignored the many cases upholding election advertising laws that Defendants and proposed Intervenors cited, tacitly conceding that Plaintiffs cannot distinguish them.

- Plaintiffs' supposedly "concrete" or "detailed" allegations are their lawyers' imagined hypotheticals of malicious interpretations of Prop. 211. *To be clear, none of those things has occurred and nothing suggests they are likely to occur*.

The Complaint took out-of-context phrases, used implausible hypotheticals, and offered incorrect legal conclusions about the supposed overbreadth and chilling effects of Prop. 211. The same is true of their as-applied challenge about chilled speech. Prop. 211 is an uncontroversial election advertising disclosure law like those courts across the country have upheld. The Commission Defendants respectfully ask the Court to grant their Motion (Doc. 23) and dismiss the Complaint.

**ARGUMENT**

**I.     Plaintiffs misunderstand the applicable legal standards.**

**A.     Plaintiffs' conclusory statements of law are not well-pleaded facts.**

At least three times, Plaintiffs asserted (at 5 & 35) that their Complaint made "concrete" allegations that defeat the motions to dismiss. But their allegations are just hypothetical predictions or legal conclusions. A complaint does not "suffice if it tenders naked assertions devoid of any further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citation omitted).

The Complaint is filled with such conclusions, which Plaintiffs ask the Court to treat as "facts." We list a few examples. Plaintiffs allege that Prop. 211 "lacks guardrails to ensure that the speech it regulates has a sufficient nexus to the asserted interests, specific to the electoral context, that Arizona purports to have in the required donor information" (Doc. 1 ¶ 6), that it is overly "broad" (*id.* ¶ 5), or that it "chill[s] the right to opine publicly and petition one's government under the First Amendment and shield[s] elected officials from criticism almost the entirety of each even-numbered year" (*id.* ¶ 2). These are conclusory allegations regurgitating legal standards. Throughout their Response, Plaintiffs cite the Complaint as "proof" of such conclusory allegations. *See, e.g.*, Doc. 33 at 4. But those conclusions do not satisfy Plaintiffs' pleading burden.

**B.     In assessing a facial challenge, courts do not consider hypothetical or imaginary cases.**

Even under Plaintiffs' favored case, their facial challenge requires showing that "a substantial number of [Prop. 211's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Bonta*, 141 S.Ct. at 2387 (quotation marks and citation omitted). Plaintiffs did not come close.

First, they rely on implausible hypotheticals that their lawyers conjured. But the United States Supreme Court warns against "speculat[ing] about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50 (2008). The Commission Defendants cited *Grange* three times (Doc. 23 at 8 & 17). Plaintiffs never addressed it, conceding they cannot rebut it.

The Ninth Circuit and this Court apply that same skepticism to hypotheticals as part of facial challenges. *E.g.*, *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 388 (9th Cir. 2016) (rejecting injunction in facial challenge to ballot collection prohibition); *Isaacson v. Mayes*, 2023 WL 315259, at *3 (D. Ariz. Jan. 19, 2023) (rejecting facial challenge to abortion law). But hypotheticals are all Plaintiffs offer.

Plaintiffs argue (at 7–8) that they are raising the First Amendment rights of those not before the Court. Plaintiffs' principal authority about hypothetical arguments and

1  facial challenges (at 8) is *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112
2  (9th Cir. 1999). But the portion of *4805 Convoy* that Plaintiffs cited addressed standing,
3  not First Amendment facial challenges. Moreover, that substantive challenge did not turn
4  on imagined hypotheticals. Instead, that plaintiff showed that the ordinance lacked two
5  procedural safeguards the caselaw requires for licensing adult businesses. *Id.* at 1113–
6  16.

7  Plaintiffs built their facial challenge on imagined problems that might arise if just
8  the right combination of facts and participants occurs in unusual situations. But that is
9  not the correct approach to facial challenges. "[U]ncertainty about the correct resolution
10 of edge cases will not warrant facial invalidation if it is clear what the [law] proscribes in
11 the vast majority of its intended applications." *Hernandez v. City of Phx.*, 43 F.4th 966,
12 983 (9th Cir. 2022) (quotation marks and citation omitted) (rejecting challenge). We
13 often will return to this "edge case" notion because Plaintiffs' arguments rely on supposed
14 uncertainties about hypothetical edge cases their lawyers concocted.

15 It also is appropriate to await the rulemaking process when, as here, future
16 regulations will implement a law. *See, e.g.*, *Aargon Agency, Inc. v. O'Laughlin*, 2023
17 WL 4008676, at *5 (9th Cir. June 15, 2023) (agency regulations eliminated alleged
18 vagueness). Instead, Plaintiffs ask the Court to ignore that "[f]acial invalidation is,
19 manifestly, strong medicine that has been employed by the Court sparingly and only as a
20 last resort." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1155 (9th Cir.
21 2001) (quotation marks and citation omitted) (rejecting vagueness challenge). "To justify
22 facial invalidation, a law's unconstitutional applications must be realistic, not fanciful,
23 and their number must be substantially disproportionate to the statute's lawful sweep."
24 *United States v. Hansen*, 2023 WL 4138994, at *5 (U.S. June 23, 2023).

**C.  An as-applied exemption requires more than a desire for anonymity or generalized threats of harm.**

27 Plaintiffs admit (at 3–4) that their as-applied challenge requires a reasonable
28 probability that disclosing contributor information will subject them to threats,

3

harassment, or reprisals. But Plaintiffs ignore authority the Commission Defendants cited (Doc. 23 at 15–16) holding that such challenges require the challenging party be a minor group that promotes almost universally rejected ideas. And those challenges typically require government-sponsored or government-tolerated harassment.

Authority Plaintiffs cited (at 4) emphasizes how they miss that mark; it involved "a minor political party [60 members] which historically has been the object of harassment by government officials and private parties." *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 88 (1982). In contrast, AFP boasts it has "4 million activists in all 50 states," 36 state chapters, 140 offices, endorsed 312 successful candidates, and wrote "500,000+ letters" to Congress.[1] Plaintiffs never allege facts satisfying their as-applied pleading burden.

## II. Plaintiffs did not plead facts showing that Prop. 211 unconstitutionally chills free speech (Count I).

### A. Prop. 211 is substantially related to sufficiently important government interests.

The parties agree that "exacting scrutiny" applies. Election disclosure and disclaimer requirements must bear a "substantial relation" with a "sufficiently important government interest." *Citizens United v. FEC*, 558 U.S. 310, 366–67 (2010) (quotation marks and citation omitted).

Disclosure requirements serve at least four substantial government interests: (1) providing information so voters know who is speaking and spending money on elections; (2) letting voters assess post-election favors elected officials may give financial supporters; (3) ensuring elections are fair and honest; and (4) an administrative interest in supporting the other three interests. *See Buckley v. Valeo,* 424 U.S. 1, 67–68 (1976); *Citizens United*, 558 U.S. at 368; *Eu v. S. F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989).

Plaintiffs label (at 28) the information interest as "amorphous, ipse dixit" because

---

[1] Americans for Prosperity, *About Us* (June 29, 2023, 6:34 a.m.), https://americansforprosperity.org/about/.

4

it "bears no relation to combatting corruption." Plaintiffs could not point to one election disclosure case to support that argument. There's good reason for this—the Ninth Circuit held in March 2023 that a state has "a strong governmental interest in informing voters about who funds political advertisements." *No on E*, *San Franciscans Opposing the Affordable Hous. Prod. Act v. Chiu*, 62 F.4th 529, 540 (9th Cir. 2023). This was no aside—the Court noted the long-held principle that knowing *who* is speaking "is of great importance" in evaluating ballot measures. *Id.* (quotation marks and citation omitted).

In fact, *No on E* approved a "secondary-contributor requirement" because "providing information to the electorate may require looking beyond the named organization that runs the advertisement" as "individuals and entities interested in funding election-related speech often join together in ad hoc organizations with creative but misleading names." *Id.* (quotation marks and citation omitted). "[T]he interest in learning the source of funding for a political advertisement extends past the entity that is directly responsible . . . ." *Id.* at 541. Informing the voters who is speaking is important regardless of anti-corruption concerns.[2]

Plaintiffs contend (at 28) that Prop. 211 impedes informing the electorate because of the "sheer *volume* of information" and by "directly tying named donors to candidates and issues those donors may support only glancingly." The Ninth Circuit rejected this argument, too. *Id.* at 541.

Plaintiffs next argue that existing state and federal laws already cover Prop. 211's interests; those other laws prohibit contributions to candidates in other people's names. [Doc. 33 at 29 (citing A.R.S. § 16–1022(B), 52 U.S.C. § 30122).] But laws prohibiting straw-man campaign contributions are designed to enforce contribution limits; they do not tell voters who funds political advertising. These are different concerns.

---

[2] Plaintiffs' argument (at 37–38) that the *No on E* plaintiffs did not challenge the disclosure requirements is wrong. Those plaintiffs challenged the disclaimer provisions *because* they required disclosing contributors. *No on E*, 64 F.4th at 535; *San Franciscans Supporting Prop B v. Chiu*, 604 F. Supp. 3d 903, 911–12 (N.D. Cal. 2022).

5

Plaintiffs also attack the anti-corruption, administrative, and election integrity interests that overwhelming precedent finds are sufficiently important. And those precedents likewise addressed ballot measures, holding that disclosure requirements "preserve the integrity of the electoral process by deterring corruption and the appearance of corruption." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 832 (9th Cir. 2014) (upholding law requiring disclosing $100+ contributors to committees supporting or opposing ballot measures). Such precedent explains Plaintiffs' failure to cite authority.

Prop. 211 prevents individuals and groups from hiding behind anodyne names to conceal their aims, intents, and profits from candidates *and* ballot measures. Plaintiffs would defeat that important interest through the formal expedient of creating shell entities to launder contributions through. This Court should reject Plaintiffs' invitation to sweep aside decades of law holding otherwise.

**B.    Plaintiffs did not meet their pleading burden about alleged overbreadth.**

Our Motion showed that Plaintiffs misunderstand the provisions of Prop. 211 they argue are overbroad and that these provisions follow campaign finance disclosure requirements that courts approved. In their Response, Plaintiffs simply restate their incorrect readings of Prop. 211.[3]

**1.    The definition of campaign media spending is valid.**

Plaintiffs first argue (at 8–14) that Prop. 211 has "*overbroad triggers*," focusing on five definitions of "campaign media spending" they contend are overbroad. Plaintiffs launched this broadside before the Commission has passed one regulation or initiated one enforcement action.

Plaintiffs complain (at 12) about the "catch-all trigger" for "other partisan campaign activity" in A.R.S. § 16–971(2)(a)(vi). This provision defines campaign media

---

[3] Plaintiffs concede (at 20 n.9) the law of this circuit holds that groups need not have a major purpose of affecting elections to be subject to election communication disclosure laws. That clear authority rebuts Plaintiffs' argument, so we do not address it.

spending to include activities and communications that "support[] the election or defeat of candidates of an identified political party or the electoral prospects of an identified political party," including "other partisan campaign activity." Plaintiffs cannot dispute that "partisan" in Title 16 refers to a recognized political party or party affiliation. [*See* Doc. 23 at 11 n.6 (citing statutes).] Plaintiffs insist (at 12) this is merely Defendants' "gloss, different from the laws terms," but they never identify those differing "terms." They also never explain why it is plausible that unidentified "regulators" will disregard their constitutional duties and misinterpret "partisan" to mean "controversial." Plaintiffs' unreasonable interpretation of the statute provides no basis for a facial challenge to Prop. 211.[4]

Similarly, Plaintiffs insist (at 11) that any speech at any time praising or criticizing an elected official could be communication that "promotes, supports, attacks or opposes *the recall* of a public officer." A.R.S. § 16–971(2)(a)(v) (emphasis added). But this provision requires an actual recall under A.R.S. §§ 19–202.01 and –203. The use of "the" in § 16–971(2)(a)(iii) confirms that speech about a particular recall is necessary. *See, e.g., Smith v. Melson, Inc.,* 135 Ariz. 119, 121 (1983) ("Unlike the indefinite article 'a', 'the' is a definite article used in reference to a particular thing."). Even if ambiguities existed, "the canon of constitutional avoidance would still counsel" the Court to adopt a "fairly possible" interpretation; "[w]hen legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict." *Hansen*, 2023 WL 4138994, at *10. Plaintiffs' reading does the opposite—it misconstrues the statute's limitations to manufacture a constitutional concern.

Plaintiffs also argue (at 10) that defining campaign media spending as reaching "public communication that promotes, supports, attacks or opposes the qualification or

---

[4] Plaintiffs ignore that a "word or phrase is presumed to bear the same meaning throughout a text . . . ." Antonin Scalia & Bryan A. Garner, *Reading Law: the Interpretation of Legal Texts* 170 (2012) (presumption of consistent usage canon); *see also id.* at 252 (related-statutes canon). Courts should interpret "partisan" to have the same meaning throughout Title 16. *See also* A.R.S. § 1–213 (rules of statutory construction).

7

1 approval of any state or local initiative or referendum," A.R.S. § 16–971(2)(a)(iv), is
2 "stunningly broad." They posit that advocating for treating animals humanely might
3 become covered campaign spending in a year with an initiative concerning specific
4 practices related to animals. But Plaintiffs disregard the limiting language in Prop. 211—
5 communications only come within the (2)(a)(iv) definition if they offer a view on "the
6 qualification or approval" of an actual initiative or referendum. Merely speaking in favor
7 of some thematically related issue is insufficient.

8         Plaintiffs also challenge (at 9–10) the 2(a)(iii) definition: "[a] public
9 communication that refers to a clearly identified candidate within ninety days before a
10 primary election until the time of the general election and that is disseminated in the
11 jurisdiction where the candidate's election is taking place." Plaintiffs complain (at 9) that
12 the "mere *mention* of an elected official's name would be covered between May and
13 November of any even-numbered year." What Plaintiffs do not mention is that the phrase
14 "refers to a clearly identified candidate" is *identical* to language in 52 U.S.C.
15 § 30104(f)(3)(A)(i)(I), the federal definition of electioneering communication. The
16 Supreme Court upheld the disclosure/disclaimer requirements tied to this definition in
17 *Citizens United*. 558 U.S. at 366–67.

18         Thus, Plaintiffs' argument that the "refers" language is too broad crumbles. All
19 that remains is their assertion that the length of time in (2)(a)(iii)—90 days before the
20 primary election through the general election—is too expansive. Yes, this period is longer
21 than under federal law—30 days before a primary election through the general election.
22 52 U.S.C. § 30104(f)(3)(A)(i)(I). But Plaintiffs cite nothing to support their argument
23 that the disclosure and disclaimer requirements beginning in May versus July creates
24 constitutional issues.

25         Plaintiffs challenge (at 12–14) the (2)(a)(vii) definition of campaign media
26 spending that includes activities done in preparation for or in conjunction with the other
27 definitions. They argue that spending $50,000 anywhere in the nation to prepare a
28 communication incidentally reaching Arizonans might require filing disclosures and

1  using disclaimers under Prop. 211. Plaintiffs again misread the statute. Prop. 211 only
2  covers spending in "statewide campaigns" or other "campaigns." A.R.S. § 16–971(7)(a)
3  (defining "covered person" for purposes of the Act). It covers only Arizona campaigns.
4  *See* A.R.S. §§ 16–971(3), (4), (15) (incorporating Arizona definitions of candidate,
5  campaign committee and political action committee), –901(17) (defining election). Thus,
6  the spending thresholds only reach spending directed at Arizona, not communications
7  outside the state that merely mention an Arizona candidate in passing.

8  Plaintiffs resurrected (at 13) their speculation that Virginia websites not directed
9  toward Arizona come under the statute. Set aside the presumption against Arizona laws
10 having extraterritorial application (Scalia & Garner at 268)—Plaintiffs' websites are not
11 covered "public communication" because they presumably are not "paid
12 communication." A.R.S. § 16–971(17)(a).

13 In short, Plaintiffs' fears of an overbroad scope for the definitions of campaign
14 media spending come from misreading Prop. 211. They ask the Court to "throw out too
15 much of the good based on a speculative shot at the bad." *Hansen*, 2023 WL 4138994,
16 at *12 (rejecting facial overbreadth challenge). Instead of adopting Plaintiffs' approach
17 of hypothesizing that any possible misinterpretation of Prop. 211 will occur and justifies
18 invalidating the law, the better approach is to dismiss this lawsuit because their facial
19 attack on Prop. 211 fails. Prop. 211 is narrowly drawn to apply only to election-related
20 speech.

21 **2. The disclosure and disclaimer requirements are routine.**

22 Plaintiffs contend (at 14) that the "disclosure and disclaimer requirements are
23 likewise vastly overbroad." Plaintiffs first complain (at 15) that, due to its supposedly
24 "novel design, Proposition 211 compels the disclosure of donors who had no knowledge
25 of or intent to engage in electioneering." Plaintiffs ignore the authority the Commission
26 Defendants cited (Doc. 23 at 9) that considered and rejected the same argument Plaintiffs
27 make: *No on E*, 62 F.4th at 541, and *Gaspee Project v. Mederos*, 13 F.4th 79, 89 (1st Cir.
28 2021), *cert. denied*, 142 S. Ct. 2647 (2022). *No on E* also explained why Plaintiffs' cited

cases (Doc. 38 at 14 n.8) are inapposite: "Those courts upheld laws that required *only* disclosure of earmarked contributions. But neither court suggested that, or had occasion to consider whether, a law fails narrow tailoring *unless* it is limited to the disclosure of earmarked contributions." *No on E*, 62 F.4th at 545.[5]

Tacitly conceding they cannot rebut our authority, Plaintiffs pick around the edges. They complain (at 16) about routine election-related disclosure provisions, such as that disclosures must include donors' occupations and employers, and that disclosures cover a two-year election cycle. These are standard requirements. *See* 52 U.S.C. §§ 30101(13), 30104(b)(2), 30104(b)(3)(A).

Plaintiffs finally argue (at 17) that it is overbroad to include "in-kind contributions" in mandated disclosures. *See* A.R.S. §§ 16–973(6), 16–971(11). But Plaintiffs offer no legal authority suggesting that requiring disclosure of in-kind contributions is unconstitutional. There is no difference between money contributed for campaign media spending or in-kind contributions of the items the money would buy. Indeed, courts rejected challenges to disclosure regimes regarding Plaintiffs' hypothetical about *pro bono* legal services. *See State v. Evergreen Freedom Found.*, 432 P.3d 805, 808, 814–15 (Wash. 2019) (in-kind contribution of *pro bono* legal services properly subject to disclosure requirement).[6]

### 3. Prop. 211's monetary thresholds are quite high.

Plaintiffs continue insisting (at 18–19) that Prop. 211's monetary thresholds are too low. That is despite the $5000 disclosure threshold exceeding disclosure minimums in federal law that the Supreme Court approved. *Citizens United*, 558 U.S. at 366–71; *see* 52 U.S.C. § 30104(f)(2) (must disclose $1000 contributions). Plaintiffs complain that

---

[5] *See also, e.g.*, *Rio Grande Found. v. Oliver*, 2020 WL 6063442, at *12–13 (D.N.M. Oct. 14, 2020) (disclosure of $5000+ contributions in two-year election cycle permissible; statute provided opt-out option for contributors; denying preliminary injunction).

[6] Plaintiffs' hypothetical about disclosure including a church volunteer who answers phones ignores the statute's language (again). Only in-kind contributions "to enable campaign media spending" are covered. A.R.S. §§ 16–972(E) & –973(A)(6).

$5000 is across a two-year election cycle, compared to the $1000 that *Citizens United* considered for "the period beginning on the first day of the preceding calendar year and ending on the disclosure date," 52 U.S.C. § 30104(f)(2). *That comparison proves Defendants' point*—the $1000 minimum in *Citizens United* covered a period of up to two years. Plaintiffs cite no authority invalidating a disclosure threshold like $5000 over two years (or $2500 annually). Likewise, Plaintiffs never explain why the permissible three years of record keeping federal law requires for $200 in annual contributions is less burdensome than Prop. 211's five-year record keeping of contributions of greater than $2500.

### 4. Plaintiffs misconstrue the governed communication media.

Without citing any authority, Plaintiffs suggest (at 19–20) that Prop. 211 is overbroad because it applies to communications by means of "internet or another digital method, newspaper, magazine, outdoor advertising facility, mass mailing or another distribution, telephone bank, or any other form of general public political advertising or marketing, regardless of medium," A.R.S. § 16–971(17)(a), instead of only "broadcast, cable, or satellite communication." But authority Plaintiffs cite for a different proposition (at 14 n.8) rejects their argument. *Indep. Inst. v. Williams*, 812 F.3d 787, 797 (10th Cir. 2016). Prop. 211 is narrowly and properly tailored to election-related communications.

### C. Prop. 211 is not unconstitutionally underinclusive.

The Commission Defendants showed (Doc. 23 at 12) that *Plaintiffs'* chosen authority rejects their underinclusiveness arguments about campaign funding laws. Plaintiffs now ignore the authority *they* originally cited. Instead, they rely (at 20–21) on cases that do not address election advertising or spending. Unlike Plaintiffs' newly cited cases, Prop. 211 does not regulate violent video games or aim to prohibit websites from publishing actors' birthdates/ages.

Plaintiffs argue three areas of underinclusiveness: (1) the exclusion for certain traditional, non-partisan news media entities' "news stor[ies], commentar[ies], [and] editorial[s]," A.R.S. § 16–971(2)(b)(i); (2) a "tech company" exemption, which does not

exist in the statute; and (3) the confirmation that organizations whose ordinary income comes from "membership or union dues" are treated like other persons' business income, A.R.S. § 16–971(1)(b).

Prop. 211's media exemption is shared with federal election law, *see* 52 U.S.C. § 30104(f)(3)(B)(i). Plaintiffs just beg the question by arguing (at 22) that Prop. 211 is different because, in their view, it is overbroad (somehow making it underinclusive, too). They next offer a convoluted theory that the Supreme Court will reverse its existing precedent and hand them a victory. We propose a simpler approach: adhere to Supreme Court precedent and reject Plaintiffs' argument.

While Plaintiffs continue (at 21, 23) to refer to a supposed "tech company" exclusion, they never identify any statutory language creating it.

Plaintiffs offer no response to the Commission Defendants' explanation (Doc. 23 at 12) that Prop. 211 treats membership organizations like any person in that their ordinary income (dues for the work performed for their members) is exempt. This is a policy choice made in Prop. 211 to clarify how to treat that ordinary income. Plaintiffs never explain why this creates constitutional concerns.[7]

**D.     Prop. 211's administrative requirements are not burdensome or onerous.**

The Commission Defendants showed (Doc. 23 at 13) that Prop. 211 does not "forbid speech" by offering contributors a chance to opt out. Plaintiffs may engage in any speech during the 21-day opt-out period.

In response, Plaintiffs argue incorrectly (at 25) that "*one* donor's lack of authorization would at least arguably foreclose *any* covered use of general funds into which that donation has flowed." But Prop. 211 specifically provides that "*the* donor's

---

[7] Plaintiffs theorize (at 22–23) that paid advertising in the form of "a news story, commentary or editorial" might fall outside Prop. 211. This narrow issue of whether paid advertising disguised in a certain form falls within Prop. 211 is irrelevant to the statute's facial constitutionality.

1 monies may not be used or transferred for campaign media spending until at least twenty-one days after the notice is provided or until the donor provides written consent." A.R.S. § 16–972(C). Nothing in Prop. 211 requires a covered person to freeze an entire general fund just because one contributor's money is in that account.

Plaintiffs appear to ask the Court to say it is unconstitutional to require that they let contributors know their money may be used for political advertising in Arizona. Plaintiffs offer no response to the Supreme Court's explanation that "requiring that contributors be informed that their money may be used" for campaign purposes is "far more narrowly tailored and less burdensome" than requiring segregated funds. *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 261 (1986). And while Plaintiffs claim (at 25) they have "made the minimum allegations needed" to show this is somehow not true, they cite nothing in their Complaint that does so.

Plaintiffs also fail to rebut the Commission Defendants' point (Doc. 23 at 13–14) that Prop. 211's record keeping requirements are less burdensome than those upheld in *Buckley*, 424 U.S. at 84. Instead, Plaintiffs contend that the transfer record threshold ($2500) being lower than the disclosure threshold ($5000) creates some sort of problem. But *Buckley* tells us that such record-keeping requirements are justified because they "mak[e] it relatively difficult to aggregate secret contributions in amounts that surpass" limits required for disclosure. *Id.* Courts have already considered and rejected the arguments that Plaintiffs keep raising.

### E. Plaintiffs' right to petition argument has no support.

Plaintiffs argue (at 31) that Prop. 211 also infringes on the right to petition under the First Amendment. Plaintiffs do not explain how the right to petition is violated and offer no distinctions from their free speech arguments unique to the petition context. At least they conceded that their chosen case—*McDonald v. Smith*, 472 U.S. 479, 485 (1985)—rejected creating an implied Petition Clause claim. Because Plaintiffs' arguments on the freedom of speech theory fail, the Court need not address their right to petition argument with distinctions they do not suggest.

### III. Plaintiffs' as-applied challenge fails.

Most of Plaintiffs' "facts" for their as-applied challenge are legal conclusions couched as factual allegations that merely track the applicable legal test. *See, e.g.*, Doc. 1 ¶¶ 13, 43, 107–08. The remaining facts fail to even allege harassment. As mentioned in § I(C) above, Plaintiffs ignore authority rejecting their arguments about alleged harassment or retaliation. Even the *Bonta* dicta they repeat do not link *any* supposed harassment to Arizona or Plaintiffs' activities here.

Plaintiffs seek haven in *Bonta* and argue it "should not lightly be dismissed." The *Bonta* dicta do not relieve Plaintiffs of meeting their pleading burden here. Plaintiffs do not meaningfully dispute the Commission Defendants' arguments that their as-applied challenge fails as pleaded. And it makes little sense to argue that the successful facial challenge in *Bonta* somehow proves Plaintiffs' as-applied challenge to a different statute that addresses completely unrelated subject matter.

If Plaintiffs mean to imply that *Bonta*'s dicta have some preclusive effect, they are wrong. Defendants and proposed Intervenors were not parties in *Bonta*, so no preclusion could attach. "The basic premise of preclusion is that parties to a prior action are bound and nonparties are not bound." 18A Wright & Miller, *Federal Practice & Procedure: Jurisdiction* § 4449 (3d ed. Apr. 2023 update).

### IV. Prop. 211 does not compel association.

Prop. 211 does not compel association; it requires disclosing financial contributors who did not opt out. Courts regularly reject the argument that electioneering disclosures compel association by linking donors with organizations they may not fully support. The public interest is in revealing the source of campaign funding, "not ensuring that every donor agrees with every aspect of the message." *No on E*, 62 F.4th at 541. Courts do not presume voters are confused and "unable to distinguish between supporting a group that broadcasts a statement and supporting the statement itself." *Id.*

Plaintiffs likewise fail to save their as-applied compelled association challenge. Plaintiffs based the challenge on their donations to other organizations, with which they

1 would then be "compelled" to associate. The argument is frivolous—when Plaintiffs give money to other organizations, they are intentionally associating with them. Plaintiffs now try to salvage this theory by arguing (at 35–36) that their donors might be forced to associate with organizations to which Plaintiffs give money. But this theory is not in the Complaint and does not explain how Prop. 211 is unconstitutional as applied to *Plaintiffs*, as opposed to some unknown donor.

### V.  Prop. 211 uses standard mechanisms of campaign finance law.

Plaintiffs close their motion arguing that Prop. 211 differs from all other campaign finance laws. But they never explain how. They do not identify contribution thresholds, reporting requirements, recordkeeping obligations, etc., that Prop. 211 includes that courts have found improper. The new authority they cited (at 38) involved a $100 expenditure threshold, required creating a political fund with a treasurer, and several reports each year (listing assets, all contributors of $100 or more, all expenditures of $100 or more). And it required that reporting/recordkeeping until the fund's dissolution *even if it made no more expenditures*. *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 868–69 (8th Cir. 2012). How is that Minnesota law like Prop. 211? Plaintiffs never say.

Plaintiffs also make much of the purported uniqueness of Prop. 211's "private enforcement mechanism." A.R.S. § 16–977. But Prop. 211 only lets individuals file complaints for the Commission to consider. This too is hardly novel; federal law allows complaints to be filed with the FEC, 52 U.S.C. § 30109, and federal agency administrative actions can be challenged in court, much like Prop. 211 allows.

### Conclusion

The Commission Defendants respectfully ask the Court to dismiss the Complaint with prejudice.

DATED this 29th day of June, 2023.

OSBORN MALEDON, P.A.

By  s/James D. Smith
    Mary R. O'Grady
    James D. Smith
    Emma Cone-Roddy
    Sarah P. Lawson
    2929 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012

Attorneys for Defendants Damien R. Meyer, Amy B. Chan, Galen D. Paton, Mark Kimble, Steve M. Titla, and Thomas M. Collins

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

I hereby certify that on June 29, 2023, I served the attached document by first-class mail on the Honorable Roslyn O. Silver, United States District Court, Sandra Day O'Connor U.S. Courthouse, Suite 624, 401 West Washington Street, SPC 59, Phoenix, Arizona 85003-2158.

    s/Karen McClain

9963255